## MAXWELL *vs.* HOPPIE *et al.*

[This case was brought forward from the last term under ₴4271 (a) of the Code.]

1. A grantor executed a deed whereby, in consideration of ten dollars and of the love he had toward his wife and children, he conveyed to the wife certain real estate for and during her natural life, and after her death to go to the above named children, and such other children as she might then have living, by him, share and share alike, their heirs and assigns, etc. The habendum clause was to have and to hold to the wife for life and after her death to the children living at the time of her death, by the grantor; and in case of her death without leaving children, to revert to the grantor, his heirs and assigns. It then proceeded as follows: "With the power and right of the said James E. Butler to act as the trustee for his said wife and children, and as such trustee to manage and control said property, subject to the trust aforesaid, and to collect the rents, issues and profits accruing from the above described property, and to expend the same in the support and the maintenance and education of said wife and children, and should any surplus remain, to re-invest the same in such other property, subject to the above described trusts and limitations, as he shall deem most for the interest of said trust estate, and with power and authority to the said Elizabeth C. Butler (the wife) to change said trusteeship and select another, upon application to the chancellor." The warranty was to the wife and children of the grantor:

*Held*, that such a deed created a trust, or charge in the nature of a trust, upon the life estate of the wife for the maintenance, support and education of the children.

(a.) Under this deed the wife could not manage and control the property, but it was the duty of the husband as trustee to collect the rents, issues and profits, to expend the same for the maintenance and support of the wife and children and the education of the latter, and to invest the surplus, if any remained, in such property as he might deem most for the interest of the estate, upon the same trusts and limitations as those contained in the deed.

(b.) The power to change the trustee with the approval of the chancellor does not affect the construction of the deed. Such power could have been exercised without any express reservation for that. purpose.

2. If two clauses be utterly inconsistent, the former must prevail, but the intentions of the parties from the whole instrument should, if possible, be ascertained and carried into effect. The doctrine of repugnant clauses is not favored.

(a.) This case differs from that in 32 *Ga.*, 588, and from the *obiter dictum* in 56 *Ga.*, 170.

3. No ambiguity requiring explanation by parol was presented by this deed; and it would be improper to create an ambiguity by parol for the purpose of explaining it.

4. It follows from the above that the power and right of the trustee were not subservient to his wife's legal estate for life, nor were they personal and attended with no duty to the children.

February 20, 1883.

Deeds. Trusts. Estates. Before H. K. McCay, Esq., Judge *pro hac vice*. Fulton County. At Chambers. June 6, 1882.

To the report contained in the decision it is only necessary to add, in connection with the third division thereof, that the bill of exceptions states that "such portions of the affidavits as appear as exhibits to the bill and answer as were not considered by the judge on objection are enclosed in brackets." On turning to the record, no part of the affidavit appears to be so enclosed, but from the argument and briefs of counsel it may be gathered that the judge refused to consider evidence as to certain directions claimed to have been given to J. S. Smith, the father of Mrs. Butler, by J. E. Butler, to the effect that Smith should have the deed made to Mrs. Butler for life with remainder

to her children; also evidence of declarations made by
Butler after the deed was executed, stating its legal effect.

HOPKINS & GLENN; L. E. BLECKLEY, for plaintiff in error.

HOKE SMITH ; A. C. KING, for defendants.

HALL, Justice.

In order to settle a difficulty between himself and wife,
and to induce her, after a separation brought about by his
irregular habits, to return, and for the purpose of making
provision for the maintenance and support of the family
and the education of their children, James E. Butler, on
the 29th day of September, 1869, executed and delivered
a deed whereby, in consideration of ten dollars and of the
love he bore to his said wife and their two children, Katie
and Lizzie, he conveyed to the wife certain real estate for
and during her natural life, and after her death to the
above named children and such other children as she may
then have living, by him (her present husband), share and
share alike, their heirs and assigns, etc. This is the whole
substance of the premises of the deed. The *habendum* is
as follows:

"To have and to hold the above granted parcels of land and prem-
ises, together with all and singular the rights, members and appur-
tenances thereof, to the same in any manner being or belonging, to
the said Elizabeth C. Butler for and during her natural life, and after
her death to said above named children, and such other children as
she may have living at the time of her death by her said present hus-
band, share and share alike, and if she shall die leaving no children
or child living at the time of her death by her present husband, then
and in that event the said described property shall revert to the said
James E. Butler, his heirs and assigns, with the power and right of
the said James E. Butler, to act as the trustee for his said wife and chil-
dren, and as such trustee to manage and control said property, sub-
ject to the trust aforesaid, and to collect the rents, issues and profits
accruing from the above described property, and to expend the same
in the support and the maintenance and education of his said wife
and children, and should any surplus remain, to re-invest the same
in such other property subject to the above described trust and limita-

tions, as he shall deem most for the interest of said trust estate, and with power and authority to the said Elizabeth C. Butler to change said trusteeship and select another upon application to the chancellor."

Immediately succeeding is this warranty of title:

"And the said James E. Butler, for himself and his heirs and assigns and adminstrators, the said granted premises to his said wife and children, will warrant and forever defend the right and title thereof against themselves and all other persons by virtue of these presents."

After the execution of this deed, these parties had another child, a son, born to them. James E. Butler died leaving his wife and these three children, all of whom are minors, still in life, surviving him. . The wife administered upon his estate, and has lately married Dr. George T. Maxwell. After this marriage, Katie left the house of her mother, and against the mother's consent married George E. Hoppie; upon this marriage, her mother refused to furnish her any support from the income derived from the property thus conveyed. James E. Butler managed the property under the provisions of the deed while he lived. Mrs. Hoppie, by her husband and next friend, filed this bill against Mrs. Maxwell, in which she alleged various acts of waste and mismanagement of the property, and that the conveyance in question created a trust estate during the life of Mrs. Maxwell for the benefit of herself and her children by her former husband, and at her death that the fee vested in the said children. She asked and obtained for herself, her minor sister and brother, who by subsequent amendment were with her made parties to the bill, an order for injunction restraining Mrs. Maxwell from interfering with or managing the property, and also the appointment of a receiver. To this decree Mrs. Maxwell excepted, and now prosecutes this writ of error to reverse it. She alleges that the judgment below was erroneous:

(1.) Because the deed in question created no trust estate at all, either in favor of herself or of the children; that it conveyed to her an unincumbered and unconditional

v 70–11

estate for life, with remainder to such children by her former husband, James E. Butler, as should be living at her death.

(2.) That the power and right reserved by the deed to James E. Butler to manage and control the property, to collect, expend and invest the income, was subservient to her legal estate for life; that it was personal and discretionary; attended with no duty to the children, was not acquired by the deed, but existed "far more amply" before than afterwards; that he did not take the property from another, but had it himself, and with it all the right and power, and more too, than the conveyance specifies; and that the previously existing right and power was precisely the same, only much broader than such as the instrument had enumerated.

(3.) If there was a duty imposed upon him by the deed, attended with a right in the children, both the right and duty were inconsistent with the estate conveyed in the premises, and the rule that the subsequent clause was void, where the same deed contained repugnant clauses, prevailed.

These were the only questions insisted upon before us at the argument, and if the positions taken are well founded, they are decisive of the case. But, notwithstanding the difficulties raised by the earnest, ingenious and plausible argument of her eminent counsel, we are satisfied that neither one of these positions, however sound as abstract principles, can be made applicable to the facts and circumstances of this case.

1. The support of these complainants is either a trust, or a charge in the nature of a trust, upon this life estate of the defendant. This follows from the terms of the instrument irrespective of the circumstances that led to and attended the transaction. In Foley *vs.* Parry, 2 Mylne & K., 138 (7 Eng. Ch. R., 138), it was held that, "where a testator gave his real estate and also his residuary property to his wife for life, with remainder to an infant,

great nephew for life, a statement in the will that it was his particular wish and request that his wife and the infant's grandfather would superintend and take care of the infant's education, so as to fit him for any respectable profession or employment, was held, under the circumstances, and upon the effect of the whole instrument, to charge the main-. tenance and education of the infant upon the interest taken by the testator's widow under the will. " " The words, " Brougham, Ld. Ch., in pronouncing this decree, "though abundantly strong as regards the requisition, are feeble as regards maintenance; and are susceptible, though barely susceptible, of a different construction, namely, as intended only to intrust the widow and grandfather with a general superintendence in the nature of guardianship, which by law the testator could not formally and absolutely create. But the court is not confined to the particular clause. It is entitled to look through the whole instrument, and if it appears from the whole that the maker could have had but one intention, that is to say, if he cannot without straining after a possibility, be supposed to have had any other meaning in the words used than to express a wish or desire that the devisee should perform a given duty by means of the fund given, that fund is as much affected with a trust as if the most precise and formal words had been employed. It is impossible to read this will, and weigh the whole of its contents, without coming to the conclusion that the testator wished, that is, directed his nephew to be maintained and educated by his wife; and I think he only comprehended the grandfather in the recommendation with a view to obtaining for his widow the assistance of that male relative of the infant in per- forming these offices, the expense of which the widow was to pay out of her legacy." His Lordship then proceeds to give cases in which trusts have been raised and charges imposed by words much less strong and precise than those here employed, such as " desire, " " request, " " recom- mend," nay, even " authorize and empower, '' which he

declares "sufficient to impose an obligation which the court will enforce."

Again, "where testator bequeathed to his executors all his freehold estates, annuities, moneys out upon security to interest, and every of them in trust to permit his wife, M., to receive the rents, issues, income, profits and proceeds thereof for her own use and benefit, and for the maintenance and education of his children, naming them, so long as his wife should continue his widow; and in case she should marry, to pay her an annuity of £100 per annum; and subject to such trusts, in trust, after the decease or marriage of M., for his said children, in equal shares, when and as they attain the age of twenty-one; it was held that a trust was constituted of a sufficient part of the income of the property for the maintenance and education of the children, and that such trust was capable of continuance beyond the period of a son attaining twenty-one, or a daughter attaining that age, or marrying; and being of opinion that a discretionary power as to the mode of executing the trusts was given M., the wife, the court directed inquiries for the purpose of ascertaining how such discretionary power had been and how it ought to be exercised." 2 Younge and Coll. 363, (21 Eng. Ch. R., 362).

No formal words are necessary to create a trust estate. Wherever a manifest intention is exhibited that another person shall have the benefit of the property, the grantee shall be declared a trustee. Code, §2305. Precatory or recommendatory words will create a trust if they are sufficiently imperative to show that it is not left discretionary with the party to act or not, and if the subject-matter of the trust is defined with sufficient certainty, and if the object is also defined with certainty, and the mode in which the trust is to be executed. Code, §2318.

Any agreement or contract in writing made by a person having the power of disposal over property, whereby such person agrees or directs that a particular parcel of prop-

erty or a certain fund shall be held or dealt with in a particular manner for the benefit of another, in a court of equity raises a trust in favor of such other person against the person making such agreement, or any other person claiming under him voluntarily or with notice. 1 Perry on Trusts §82. " Indeed, as a general rule, any order, writing or act, by which a fund is appropriated to any particular purpose, amounts to an equitable assignment of that fund. 2 Spence, 860, and cases there cited in note (d).

This court in *Hunter vs. Stembridge*, 12 *Ga.*, 192, held that where a testator by his will devised to his son Henry the plantation whereon he lived, in fee, and after bequeathing a negro woman to his wife during her life, used the following words : " and I also allow my son Henry to give her a support off my plantation during her life time," that the testator used the word " allow " as expressive of his intention, that his said son should support the wife during her life, off the plantation, and that Henry took the same under the will subject to that charge, which a court of equity will enforce. " It is immaterial that all the foregoing were cases arising under wills. The sections quoted above from our Code do not confine the rules therein prescribed to wills, but apply them to all contracts or agreements, and other transactions by which a trust is declared in writing.

In the case before us the intention of the parties to fix this charge upon the wife's life estate is too clear to admit of doubt. The trustee is required in express terms to manage and control the property for the wife and children, subject to the trusts of the deed ; to collect the rents, issues and profits accruing from the property ; to expend the same for the maintenance and support of the wife and children, and for the education of the latter. And after these objects were accomplished, then it was his duty to invest any surplus that remained, in such other property as he should deem most for the interest of the estate, upon the same trusts and limitations as those contained in the deed.

The wife was not the manager and controller of the property, but the husband as trustee was; she had no power over it, and could only get the benefit designed for her and the children through the trustee. It is true, the power and authority were reserved to her of changing the trustee and selecting another, upon application to the chancellor; that is, as we take it, if the chancellor approved the change and selection, then it might be done, otherwise not,—a power which would have been exercised by the chancellor, at the instance of any one interested in the trust, independent of the reservation. All this clearly shows that there never was the slightest expectation or intention of entrusting her with the control and disposition of the property itself, or of the entire income arising therefrom; this pertained exclusively to the trustee, whether he was the husband or some one else appointed with the approbation of the chancellor. The property and its income was, from the commencement, under the protection and control of the court of equity.

2. We shall next consider whether there is anything in the charge or incumbrance which this trust imposes upon the estate conveyed to the wife which makes it repugnant to that estate, and consequently void.

The cardinal rule in the construction of contracts is to ascertain the intention of the parties; and if that intention is clear and contravenes no rule of law, and there are sufficient words to arrive at it, then it is to be enforced irrespective of all technical or arbitrary rules of construction. Code, §2755. Now, what are the rules to which we may resort for the purpose of ascertaining and interpreting this intention? The first which we shall invoke is this: that the construction which will uphold a contract in whole and in every part is to be preferred, and the whole contract should be looked to in arriving at the construction of any part. Code, §2757, par. 3. The rules of grammatical construction usually govern, but to effectuate the intention they may be disregarded; sentences and words may be

transposed and conjunctions substituted for each other. In extreme cases of ambiguity, where the instrument as it stands is without meaning, words may be supplied (*Ib.*, par. 5.)

Every marriage contract, made in contemplation of marriage, shall be liberally construed to carry into effect the intention of the parties, and no want of form or technical expression shall invalidate the same. Code, §1777. Why may not the same benignant and indulgent rule of interpretation be applied to a post-nuptial settlement, especially when that settlement is made to end family disputes and to secure domestic quiet? The husband is authorized by express provision of law, at any time during the coverture, to convey through trustees, or directly to his wife, any property to which he has title, subject to the rights of prior purchasers or creditors without notice. Code, §1776.

So hard does the law strive to carry out the lawful intention of parties to contracts, that it will never resort to the doctrine of repugnant clauses in a deed and declare the latter void, except in cases of absolute necessity. If two clauses in a deed be utterly inconsistent, the former must prevail, but the intention of the parties, from the whole instrument, should, if possible, be ascertained and carried into effect. Code, §2697.

Two cases decided by this court, have been cited as in point for their position by the counsel for plaintiff in error; the first is *Daniel et al. vs. Veal*, 32 *Ga.*, 588. There an absolute deed of gift had been made to a slave, and the donor by a subsequent clause in the deed reserved to himself the right of revoking the gift. It was held that this reservation was irreconcilably repugnant to the operative part of the deed; was incompatible with the estate conveyed, and being subsequent thereto was void. In delivering the opinion in this case, Jenkins, J., quotes with approbation from Shepp., Touch. 88: " In a deed, if there be two clauses so totally repugnant that they cannot stand together, the first shall be received and the last rejected." This decision was rendered in 1861,

prior to the time when the Code went into operation, and before the liberal method of dealing with such transactions which it requires had gone into effect, yet, the learned judge in the conclusion of his decision says: "It can be scarcely necessary to add, that we decide this case upon common law principles, regarding it entirely *dehors* the statute of uses and the construction given to that statute in equity," which we now hold is the rule recognized by our Code. The other case quoted, 56 *Ga.*, 170, must have been cited on account of an *obiter dictum* of Bleckley, J., who delivered the opinion, and who says *arguendo:* "And if the power of sale is inconsistent with that construction, it is inconsistent with the estate conveyed; and being a reservation contrary to the grant, and not preceding but following the words of the conveyance, it should be deemed subordinate, and, if necessary, be declared void." The legal title was in the trustee in that case, and the power of sale, which was never exercised, was in the *cestui que trust*, and the entire instrument received such a construction as to avoid the repugnancy which, under different treatment, would have resulted.

We know of no case in which a charge or incumbrance by way of trust imposed by the same deed upon the estate, though occurring in a subsequent part thereof, has been held to be so incompatible with the estate, as of necessity to be void. The learned counsel for the plaintiff in error have furnished none, and our own careful researches and inquiries have resulted in no such discovery.

To adopt the construction sought to be placed upon this instrument, would require us to reject all that portion of the *habendum* which provides for the support of the donor's family during the life of the wife; would destroy the charge which the trust places upon the property in favor of the objects of the donor's bounty; would be to disregard the manifest intention of the parties in deference to "technical and arbitrary rules of construction," which the Code time and again forbids in every variety and form of ex-

pression as we have seen, and under every variety of circumstances. While we may "transpose sentences and words" and "substitute conjunctions for each other," and while in "extreme cases of ambiguity, where the instrument would otherwise be without meaning, we may supply words to effectuate the intention," we cannot, in order to defeat it, reject anything, except where the two clauses in the same deed are so "utterly inconsistent," that it would be "impossible" to ascertain the intention from the whole instrument and to carry it into effect. This, we repeat, we cannot do, "without straining after bare possibilities" and indulging in conjectures not authorized by anything appearing on the face of the instrument or fairly deducible from the circumstances attending the transaction and shedding light upon the intention of the parties at, before, and subsequent to its consummation.

3. The court below committed no error in refusing to consider the parol testimony contained in the affidavits offered on the hearing any further than they related to the circumstances which led to and attended the execution of the deed, and were explanatory of the motives that induced the parties to act in the matter.

No case of ambiguity, either latent or patent, was presented, and scarcely a case of difficult construction. Surely there was no necessity to create an ambiguity by resorting to parol evidence, in order that it might be explained by similar testimony. We have recently decided, following the opinion of Warner, J., in *Hill et al. vs. Felton*, 47. *Ga.*, 468, that this would be improper.

4. It follows from what we have said, that we cannot concur in the conclusion sought to be reached from the only other position taken by the plaintiff in error, that "the power and right reserved by the deed to James E. Butler to manage and control the property, to collect, expend and invest the income, were subservient to his wife's legal estate for life; that they were personal and discretionary, attended with no duty to the children ; were not acquired

by the deed, but existed far more amply before than after-wards; that he did not take the property from another, but had it himself, and with all the rights and powers, and far more too, than the conveyance specifies; and that the previously existing right and power were precisely the same, only much broader than such as the instrument had enumerated."

We do not deny, but have maintained, that Butler's dominion over the property was circumscribed and modified by the deed he executed, and this we hold to be essential to the rights and interests of his wife and children, as fixed by the conveyance.

Judgment affirmed.