## WEST *et al. vs.* RANDLE.

The twelth and fourteenth items of the will in this case are not necessarily inconsistent, but construing the entire will together, the words "all the property," used in the fourteenth item, are to be taken in a restricted sense, so as to exclude from their operation the lands and negroes disposed of by the second item, and are equivalent to all the other property than that hereinbefore disposed of.

(*a*) If two clauses of deed be utterly inconsistent, the former must prevail; in a will, the latter must prevail; but the intention of the parties should, if possible, be ascertained and carried into effect,

so as to render the whole instrument operative; and where neces-
sary for the purpose of effectuating the intention, the rules of gram-
matical construction may be disregarded, sentences and words
transposed and conjunctions substituted for each other, and in ex-
treme cases of ambiguity, where the instrument, as ·it stands, is
without meaning, words may be supplied; but if the clause as it
stands may have effect, it should be so construed, however well
satisfied the court may be of a different testamentary intention.

(b) This construction is strengthened by the use of the words, "all
the property," in other items of the will.

(c) Where the intention can be ascertained from the instrument itself,
there is no necessity for a resort to extraneous evidence to explain
an apparent ambiguity, which is cleared away by the context of
the will.

(d) Besides, the interpretation given to the will in this case seems to
be that which the parties themselves have placed upon it, and in
which they have acquiesced for nearly twenty years.

BLECKLEY, C. J. concurring.

April 18, 1887.

Wills. Estates. Construction. Before Judge LAWSON.
Greene Superior Court. September Term, 1886.

Mrs. Matilda A. West and her husband filed their bill
against Augustus H. Randle, alleging, in brief, as follows:
In 1845, Richard Asbury died, leaving a will (the mate-
rial portions of which are set out in the decision). Randle
qualified as executor of the will, and soon afterwards de-
livered to Mrs. Sarah Asbury, the widow of the testator,
the tract of land mentioned in the second item of the will
as the Watts tract. Mrs. West is the daughter of the
testator mentioned in the 14th item as Matilda. The
other daughter, Emily, married the respondent and died in
1878. Mrs. Asbury, the life tenant, died in 1865, and ever
since, Randle has been in possession of the land and re-
ceived the profits thereof. He was intimately acquainted
with the provisions of the will, but complainants did not
know that they had an interest in the land until 1885,
when their attention was called to the disposition made by
the 14th item of all the property mentioned in the 2nd

item. Randle refuses to recognize their interest, and claims that, under the 12th item, upon the death of the testator's widow, the title to the Watts tract vested absolutely in Emily, his wife, and that he is now the owner thereof. This tract came to the testator through his wife, and Mrs. West and Mrs. Randle were the only children of that marriage. The property devised to Mrs. West, other than the Watts tract, is much less than that devised to Mrs. Randle, and if a construction is put upon the will by which the title to that tract would pass to Mrs. Randle alone, it would make the amounts left to the two legatees unequal, which is contrary to the general intent and purpose of the will. In numerous items of the will, the testator uses the words, "all the property," and in every instance such expression includes both realty and personalty.   Mrs. West claims a half interest in the Watts tract by virtue of the 14th item of the will, and seeks by this bill to enforce her claim.

On demurrer, the bill was dismissed, and the complainants excepted.

H. T. & H. G. LEWIS, for plaintiffs in error.

J. A. BILLUPS; JOHN C. HART, for defendant.

HALL, Justice.

Richard Asbury executed his last will and testament in the year 1843. Two years thereafter, he added to this will a codicil. He died in the year 1845, and his will was proved and letters testamentary were issued to the executor named in the will, and he entered at once upon the administration of the estate.

There are three items in the will which it will be necessary to consider, in order to determine the question made by this record. They are as follows:

"Item 2. I give to my beloved wife, Sarah, the negroes I got by her, Kitty and Frank; also lend her during her life Jesse and Bob,

then to be equally divided between Emily's and Matilda's children. I lend her the Watts tract of land, three horses, three cows and calves, one yoke of oxen and cart, three beds and furniture, a sufficiency of household and kitchen furniture for common use, also pork, corn and fodder enough for one year."

"Item 12. I give to my daughter, Emily, the land I bought of Carey Watts, Eliza and her two children, Washington Guilford, Jordan and Rhody, and all the property put in her possession; also, at my death, the land I bought of Boone, Alfred and Monfort and the Geer tract; and at the death of my wife, the land I have lent her. If H. A. Randle is willing to pay $2.25 per acre, he may have the land from the Pearce tract on the side of Bethune's spring branch next to his house."

"Item 14. I give to Emily and Matilda all the property I have lent their mother after her death."

The question arises upon the 12th and 14th items of the will, in respect to the Watts tract of land, which by item 2nd had been loaned to Mrs. Asbury. It is insisted by the complainants that these items, 12 and 14, are absolutely inconsistent with each other. This is denied by the respondent; and the controversy turns upon the force and effect to be given to the words, "all the property," as used in this last mentioned item of the will. The complainants insist that they are to be taken in their broadest sense, and the respondent, that they were used by the testator in a restricted sense, so as to exclude from their operation the lands and negroes disposed of by the 2nd item of the will. We agree with the respondent's interpretation of these words in the will, and think that the words, "all the property," were used in the restricted sense above mentioned, and that this is apparent from the frequent employment of these terms, in a similar connection, in nearly all the other bequests in this long will, and that it is necessary to attach to them this signification, to avoid repugnancy and to prevent these and other provisions of the will from being inconsistent and destructive of each other.

The cardinal rule for construing wills and contracts is to ascertain the intention of the testator in the one case, and of the parties in the other; so that the whole will or contract, and every part thereof, may, so far as they are

consistent with the rules of law, be carried into effect; and so solicitous is the law to accomplish this object, that it declares that sentences and clauses may be transposed, connecting conjunctions may be changed, and even in cases where the clause as it stands is unintelligible or inoperative, and the proof of intention is clear and unquestionable, it allows omitted words to be supplied; but if the clause as it stands may have effect, it shall be so construed, however well satisfied the court may be of a different testamentary intention. Code, §2456. This intention may be ascertained by resorting to the context, to ascertain the sense in which a particular phrase or expression or term has been used by the testator. This is a familiar and undisputed rule of law.

If it be possible to ascertain from the will itself what the intention of the testator was, resort should not be had to extraneous circumstances, although in cases of ambiguity, either latent or patent, and in cases of extreme doubt, the circumstances attending the testator at the time of the execution of this will may be resorted to in order to ascertain what he meant by certain expressions used in the various clauses of his will. But this, as before stated, is to be avoided if it be possible to ascertain that intention from the instrument itself. The law on the subject of inconsistent clauses in wills or contracts or deeds, is well laid down in our code. "If two clauses in a deed be utterly inconsistent, the former must prevail;" but in a will it is otherwise; there the latter must prevail. Code, §2576. "But the intention of the parties should, if possible, be ascertained and carried into effect, so as to render the whole instrument operative. Code, §2697. This can scarcely be considered an open question in this court. It was very carefully examined and determined, upon full discussion and deliberation, in the case of *Maxwell vs. Hoppie et al.* 70 *Ga.* 160. There the question arose upon a post-nuptial settlement, and we laid down this doctrine: "The cardinal rule in the construction of contracts is to ascertain the in-

tention of the parties, and if that intention is clear and contravenes no rule of law, and there are sufficient words to arrive at it, then it is to be enforced irrespective of all technical or arbitrary rules of construction. Code, §2755. Now what are the rules to which we may resort for the purpose of ascertaining and interpreting this intention? The first which we shall invoke is this: that the construction which will uphold a contract in whole and in every part is to be preferred, and the whole contract should be looked to in arriving at the construction of any part. Code, §2757, par. 3. The rules of grammatical construction usually govern, but to effectuate the intention they may be disregarded; sentences and words may be transposed and conjunctions substituted for each other. In extreme cases of ambiguity, where the instrument as it stands is without meaning, words may be supplied. *Ib.* 5. And we have seen that this law applies to wills as well as to contracts. This benignant rule of interpretation, which has always obtained in the case of wills, has been made applicable by our code to contracts in a number of instances, especially to trust deeds, marriage settlements and other instruments of that character. We add: "So hard does the law strive to carry out the lawful intention of parties to contracts, that it will never resort to the doctrine of repugnant clauses in a deed and declare the latter void, except in cases of absolute necessity. If two clauses in a deed be utterly inconsistent, the former must prevail, but the intention of the parties from the whole instrument should, if possible, be ascertained and carried into affect." Code, §2697. *Ib.* 161.

In a number of instances here, especially in the 3rd, 5th, 6th, and some other clauses of this will, it is perfectly apparent that the testator could have used the words, "all the property," lent to their mother for life, in no other than a restricted sense. In the 3rd item of the will, he provides for his daughter, Mrs. Daniel. He gives her a certain negro woman and her increase, and "all the prop-

erty" he has put in her possession, with the money he paid to a certain estate mentioned therein, and her own notes, mentioning the amount he gave her at a certain time, and also all his claim in the lands she sold to a person named.

Again, in the 5th item of the will he gave to a designated person, on account of his daughter, Winifred, certain negroes, a tract of land that he bought from Stephen Pearce, the right made by Flournoy, and "all the property" he had put in his possession. In the 6th item, he makes provision for his daughter, Betsy, and gives her $350 he let Thomas Lynes have, a negro, naming her, his interest in the negroes he put there, and all the property placed in her possession. Other items of the will afford similar illustrations of the meaning of these terms, but these are deemed sufficient.

Now he disposes of everything, after the death of his wife, bequeathed to her for life in the 2nd item of the will; that is, he gives two of the negroes mentioned to her absolutely, and the other two negroes he gives to the children of his two daughters, Mrs. West and Mrs. Randle. He goes on and disposes of the tract of land lent to Mrs. Asbury, by giving it at her death, by the 12th item, to his daughter, Mrs. Randle. He makes no disposition whatever of the horses, the cattle, the household and kitchen furniture, and other personal property given by this or any subsequent part of the will, until he reaches the 14th item, when, as we must conclude by following the established rules of construction, he disposes of the remainder after the life estate of his wife, thereby bequeathing it to his daughters, Emily and Matilda (Mrs. Randle and Mrs. Watts). To relieve the items in question of ambiguity, why may not the words, "other property than that hereinbefore disposed of," be supplied? Is not that the meaning of this will as plainly as though it had been expressed in terms? We think so.

It is true that the amended bill of complainants sets up and relies on various extraneous circumstances to show

that the testator might possibly have entertained a different intention from that we have deduced from the several items as well as the entire context of the will; but where that intention can be ascertained from the instrument itself, we have seen that there is no necessity to resort to this extraneous evidence to explain the apparent ambiguity, which is cleared away by the context of the will. Taking this view of the case, we think there was no error in sustaining the demurrer upon the last ground taken therein, which directly brings up the proper construction to be placed upon these items of the testator's will.

Besides, it may be remarked, that the interpretation the court has given to the will seems to be that which the parties themselves placed upon it, and in which they have acquiesced for nearly twenty years. As before remarked, the legacy of Mrs. Asbury was assented to by the executor immediately after his qualification, and she went into possession and enjoyment of this land and held it during her life; and at her death, her daughter, Emily, to whom it was bequeathed, and her husband succeeded to its possession and entered immediately on its enjoyment, and remained in undisturbed and quiet possession of it for the period just mentioned, without dissent from any party, until the filing of this bill.

Judgment affirmed.

BLECKLEY, Chief Justice, concurring.

I concur in this judgment, and will observe, in addition to what has been said, that there is no presumption that the testator disposes twice of the same property. If a will can be read and applied to the subject-matter, without giving it, or any part of it, a double application, it ought to be done; and following that guide, it is beyond all question that the testator intended Emily to take this land, for he says so. That part of the will is susceptible of but one construction. To hold that another part embraces the same land, would involve the consequence that the testa-

tor intended to dispose of the land twice. The 14th item of the will is simply a residuary clause added to the 2nd and 12th items.

With regard to ambiguities, the rule is, as I understand it, that an ambiguity is merely apparent unless it persists— unless it holds out until you have exhausted the whole context and resorted in vain to all the provisions of the instrument; if it persists and you cannot resolve it by the terms of the instrument, then it is a real ambiguity, and you are at liberty to resort to extrinsic evidence. That extrinsic circumstances are alleged in the bill, and that the demurrer admits them, does not commit the party or the court to the propriety of going into them. The admission of them by demurrer is only that they are true, not that they are relevant; and as the will can be satisfactorily construed without their aid, they are wholly irrelevant.