Bray *et al. v.* McGinty *et al.*

Although most of the phraseology in the premises of a deed of gift conveying land, and all of that used in the *habendum*, be such as a person skilled in conveyancing would rightly use to pass an estate in fee simple, and the same, if standing alone, would be wholly inconsistent with an intention to convey a less estate to the donee, yet, where the concluding words of the premises were: "then if the said [donee] should die, the same to go to his children": the effect of the deed as a whole, construing all its language together, was to create an estate in the donee for his life only, with remainder in fee to his children. The same construction is applicable to a like deed, in which the concluding words of the premises were: "reserving the use myself during my life, and if the said [donee] should die, to go to the children"; the donee, in each instance having living children at the date of the gift, and it being admitted that these children were the persons referred to by the donor. As it is evident that each of the deeds was drawn by an unskilled person, there is no probability that the comprehensive technical language employed was used in its technical sense; and although, if interpreted in that sense, the words of the deed would be repugnant, it is manifest that there was no repugnancy in the intention, the purpose being that the donee's children should succeed to his estate, and not that his heirs at law should take it by inheritance. If this was not the intention, there could be no rational object in mentioning the children or providing for them to take at all.

July 23, 1894.

Complaint for land. Before Judge Gober. Warren superior court. October term, 1893.

Glenn & Slaton and H. M. Holden, for plaintiffs.

James Whitehead, for defendants

Lumpkin, Justice.

W. A. Bray, J. M. Bray and Mrs. Tuck, the children of Richard L. Bray, deceased, brought an action against Myrtle McGinty and her guardian for the recovery of a tract of land. At the trial, it appeared that on the 15th day of February, 1847, Lucy Bray, in consideration of natural love and affection for Richard L. Bray, executed and delivered to him a deed conveying to him, his heirs

and assigns, a tract of land therein described and certain slaves, the premises concluding with these words: "Reserving the use myself during my life, and if the said Bray should die, to go to the children." In the *habendum* clause, it was recited that Richard L. Bray, his heirs and assigns, were to have and to hold the property conveyed "to his and their own proper use, benefit and behoof, forever in fee simple." Afterwards, on the 26th day of January, 1849, Lucy Bray, in consideration of natural love and affection for Richard L. Bray, executed and delivered to him another deed conveying to him, his heirs and assigns, the same tract of land and the same slaves, in the premises of which deed the following words occur: "Then, if the said Richard L. Bray should die, the same to go to his children." The *habendum* clause of this deed was, in substance, the same as that contained in the first deed. The plaintiffs were the only children of Richard L. Bray at the time either of the deeds were executed, and were his only children at the time of his death. They are "the children" referred to in the deeds executed by Mrs. Bray. The latter, before making either of the deeds in question, had a perfect title to the land, and the plaintiffs and the defendants both claim under her. Richard L. Bray was in possession of the land described in the deeds of Mrs. Bray after their date and after her death. On the 1st day of December, 1852, he conveyed the land now in controversy, it being a part of the land described in the deeds of Mrs. Bray, to one Wynn, under whom the defendants claim. The plaintiffs offered legal evidence to show that the intention of Lucy Bray, at the time of executing each of said deeds, was to convey only a life-estate in the land to Richard L. Bray, with remainder to his children. The court rejected this evidence on the ground that it tended to vary and contradict the terms of the deeds, which, in the opinion of the court, were

plain and unambiguous and conveyed a fee simple title to Richard L. Bray. Entertaining this view, a motion to nonsuit made by the defendants was sustained.

We think the court was right in rejecting the evidence above mentioned, but we differ with his honor in the construction placed by him on the deeds of Mrs. Bray. The case turns upon a proper construction of these instruments, and we think there is no real difficulty in arriving at the intention of the maker without the aid of extrinsic evidence. It cannot be denied that most of the phraseology used in both of these deeds is just such as a person skilled in conveyancing would rightly use to pass an estate in fee; and it is also quite certain that such phraseology, if it stood alone, would be wholly inconsistent with an intention to convey a less estate to the donee. It is also true that each deed contains language clearly indicating a contrary intention, and this intention, we think, manifestly was that the donee should take a life-estate only, and that after his death his children should have the land as purchasers, and not as heirs at law taking by inheritance. If this was not the intention of Mrs. Bray, there could have been no rational object at all in mentioning the children or providing for them to take at all. If no reference had been made to them in the deeds, there would undoubtedly have been an estate in fee in Richard L. Bray, to which his children would have succeeded as his heirs at law, and it was totally unnecessary to mention them in the deeds in order to give them an estate by inheritance. It is evident that both deeds were drawn by an unskillful person; and in view of all the language contained in them, it is not at all probable that the comprehensive words creating an estate in fee were used in their usual and technical sense. So interpreted, there would in each deed be a repugnancy. It is manifest, however, that there was no repugnancy in the donor's intention, and the mere

repugnancy in the words is of no real consequence. Section 2697 of the code declares: "If two clauses in a deed be utterly inconsistent, the former must prevail; but the intention of the parties, from the whole instrument, should, if possible, be ascertained and carried into effect." In *Maxwell* v. *Hoppie et al.*, 70 *Ga.* 161, Justice HALL said: "So hard does the law strive to carry out the lawful intention of parties to contracts, that it will never resort to the doctrine of repugnant clauses in a deed and declare the latter void, except in cases of absolute necessity." According to the principle laid down in the concurring opinion of Chief Justice BLECKLEY in *West et al.* v. *Randle*, 79 *Ga.* 28, if a deed can be read and applied to its subject-matter without necessarily giving inconsistent or irreconcilable meanings to different portions of it, it ought to be done. On page 36, the Chief Justice remarks: "With regard to ambiguities, the rule is, as I understand it, that an ambiguity is merely apparent unless it persists—unless it holds out until you have exhausted the whole context and resorted in vain to all the provisions of the instrument. If it persists and you cannot resolve it by the terms of the instrument, then it is a real ambiguity, and you are at liberty to resort to extrinsic evidence." It follows from the doctrine here announced that a mere repugnancy in words will not authorize a court to hold that there is a real repugnancy in a deed, and consequently to annul the latter of two inconsistent clauses, when the actual intention of the maker, viewing the instrument as a whole, can be arrived at without serious difficulty. We feel quite sure we have ascertained and correctly stated the intention of Mrs. Bray in each and in both of the deeds above referred to; and if we have done this, the conclusion is inevitable that the court erred in granting a nonsuit. The plaintiffs, under the evidence, made out a *prima facie* case and were entitled to a verdict. We

do not, of course, know what the defendants may be able to allege or prove as a defence against this action. We simply rule now that the plaintiffs have shown a sufficient title to put upon the defendants the burden of proving that they have a better one, or showing in some way that the plaintiffs are not entitled to recover.

*Judgment reversed.*