### 1127.   ROYAL UNION MUTUAL LIFE INSURANCE COMPANY *v.* McLENDON.

1. Policies of insurance will be liberally construed in favor of the object to be accomplished, and conditions and provisions therein will be viewed, if ambiguous, most strongly against the insurer. Forfeitures are not

favored, and the courts will be prompt to seize hold of any circumstance appearing in the whole transaction that will prevent forfeiture of rights accruing to the insured or the beneficiary.

2. The policy of insurance in the present case appears from the record to have been in full force and effect at the time of the death of the insured.

Action upon insurance policy, from city court of Atlanta—Judge Reid.   April 3, 1908.

Argued June 11,—Decided July 31, 1908.

*Brown & Randolph, J. J. Bowden,* for plaintiff in error.

*C. W. Smith, M. A. Hale, S. B. Hatcher,* contra.

RUSSELL, J.   The defendant in error brought suit against the insurance company to recover upon a contract of insurance issued by the company upon the life of her husband.   The defendant demurred to the petition, both generally and specially.   The plaintiff, with the permission of the court, amended her petition, to meet the special demurrer, and thereupon the trial judge overruled the general demurrer; and exception is taken to these rulings.

The record really presents only one question,—had the policy lapsed at the time of the death of the plaintiff's husband; or, to put the question more exactly, do the allegations of the petition show that at the time of McLendon's death the contract of insurance was a valid obligation, binding upon the insurer?   There can be no dispute as to the allegations of fact; because, for the purposes of the demurrer, the facts stand admitted.   We come, then, to determine the question whether the policy had lapsed at the time of McLendon's death.   The issue must be settled by a consideration of the insurance policy as a whole (including all of its terms, conditions, and stipulations), keeping always in mind the cardinal rules of construction,—that the whole contract must, if possible, be harmonized, and effect given to the manifest intention of the parties in its execution.   As we have already held, in *Arnold* v. *Empire Life Ins. Co.,* 3 *Ga. App.* 685 (60 S. E. 470), "Policies of insurance will be liberally construed in favor of the object to be accomplished, and conditions and provisions of every contract of insurance will be strictly construed against the insurer who prepares and proposes the contract.   If a policy of insurance is capable of being construed in two ways, that interpretation should be placed upon it which is most favorable to the insured; and, forfeitures not being favored, the court should be 'prompt to seize

hold of any circumstance that indicates an election to waive a forfeiture or an agreement to do so.'" In the present case, however, as it appears to us, the policy of insurance now under consideration is so free from ambiguity as to admit of but one construction. The intention of the parties to a contract is to be ascertained, in order that the whole contract, and *every* part thereof, so far as consistent with the rules of law, may be carried into effect. *Hodges* v. *Hall,* 5 *Ga.* 165; *West* v. *Randle,* 79 *Ga.* 28 (3 S. E. 454); *Brown* v. *Ramsey,* 74 *Ga.* 215. While a contract of insurance prepared and proposed by the insurer should be most liberally construed in favor of the insured (who ordinarily has no hand in the preparation of the contract), still it is not to be overlooked that the construction which will uphold the contract as a whole and in every part is to be preferred, and the whole contract should be looked to in arriving at the construction of any part. *Jackson* v. *Carswell,* 34 *Ga.* 281; *Fletcher* v. *Young,* 69 *Ga.* 592; *Maxwell* v. *Hoppie,* 70 *Ga.* 160. It is not only for the court to construe the contract, but it is also the duty of the court to determine, as a matter of law, whether a given state of admitted facts works a forfeiture or a lapse of a policy of insurance. The decision of the trial court upon the demurrer was practically the termination of the case; and we think that the demurrer was properly overruled.

Frank P. McLendon, the deceased, procured the policy of insurance in question on the 8th of April, 1899. The annual premium to be paid was $66.20 per annum. Under the terms of the policy this premium was to be paid wholly in cash, or the company agreed to advance the insured each year, at his option, $16.55 of the annual premium, and require only $49.65 to be paid in cash. For the $16.55, provided he desired that amount advanced or loaned to him in accordance with the terms of the contract, the insured was required to execute an acknowledgment of indebtedness, bearing interest at five per cent. per annum. In paying the first year's premium McLendon availed himself of this option and executed the following acknowledgment of indebtedness: "I hereby acknowledge that the Royal Union Mutual Life Insurance Co., of Des Moines, Iowa, has advanced me sixteen and 55/100 dollars, being part premiums on policy No. 6872, issued to me by said company on the 8th day of April, 1899, for $1,000.00 at age 46 on the 20 year endowment plan (actuaries 4 per cent.), which

amount, with any additional advance stated on the renewal receipt and endorsed hereon, and with interest added annually at five per cent., shall be a lien on said policy until extinguished by the surplus apportioned thereto, or is otherwise paid to the company on or before the end of the accumulative period under said policy." Dated April 8, 1899. The premiums payable on April 8, 1900, 1901, and 1902 were paid by the deceased, thus carrying his insurance to April 8, 1903, by virtue of payments made by him. No subsequent payment was made by him or in his behalf. He died on March 16, 1905. In addition to the advancements to which we have heretofore called attention, the company had made small advances, though at a slightly higher rate, during 1900, 1901, 1902, and 1903, amounting in all to $52.56, which appears to have been entered upon the original obligation quoted above, making an indebtedness of $69.11, which, with, the interest, computed to be $8.26, aggregated $77.37, which, on June 30, 1903, was the amount of the indebtedness of the insured to the company for loans or advancements. One of the stipulations of the contract is that "at the end of the third or any subsequent policy year, all premiums having been paid, this company guarantees: . . (C) If any premium herein is not paid when due, the same shall be charged as a loan against the cash surrender value if it be sufficient. The insurance will continue in force so long as this fund will pay for the same at the term premium rates of the company. At any time before the expiration of this extended insurance, the insured may furnish satisfactory health certificate and pay arrearages, with interest thereon, and continue the original policy of insurance as though no default in payment had ever occurred." The loan and cash-surrender values are embodied in the policy. The insured had paid for four years. As specified in the policy, he was entitled at that time to a guaranteed cash-surrender value of $108; so that under the stipulations of the policy, it was the duty of the company to have deducted the premium of $66.45 from the cash-surrender value of $108, in payment of the premium payable April 8, 1903, and which would have extended the insurance to April 8, 1904. Had the company complied with this stipulation of the contract, the policy would have been in force on April 8, 1904, with a cash-surrender value, specified in the policy, of $146, less the $66.45, which had been deducted to pay the premium payable

April 4, 1903, and leaving $79.55 of guaranteed cash-surrender value available upon that date, with which to pay the premium then again due, of $66.45, which would have extended the contract of insurance to April 8, 1905, nearly a month subsequent to the death of the insured, and would have left $13.10 still available upon the cash-surrender value. So it is clear to us that, so far from the policy having lapsed, it was within the power of the defendant company, and its duty, under the provisions of this contract, to have kept the policy in force for a longer period of time than the insured lived. And as the rights of the beneficiary can not be defeated by either wilful violation by the defendant company of its contract, or even by its unintentional negligence, we hold that the policy was, at the time of the death of the deceased, by the very terms of the contract, a valid policy of insurance. It was the evident intention of both parties to the contract, after the payment of three premiums, to provide for the extension of the contract automatically, so as to give the insured the benefit of his share of the surplus fund, and, in any event, to reward his faithfulness in paying three premiums, by providing that the guaranteed cash-surrender value should provide protection against forfeitures, as far as the amount was consistent with that result. Each payment thus made, according to the company's own contract, would increase the amount of the cash-surrender value, though, of course, the increase not being great enough to pay any premium in whole, it would only be a question of time before there would be no cash-surrender value available for the purpose of paying further premiums. In the estimate we have given above, we have taken the view of the case which, under the facts, is the most favorable to the company; because, if the company had continued the course of dealings which had been carried on by the deceased, and had advanced upon the certificate the sum of $16.55 annually, to be paid out of the surplus when a settlement was had, then there would have been deducted from the cash-surrender value only $49.45 each year, instead of $66.55. Or if the term rate had been deducted, it appears that only $36.40 per annum could have been taken from the cash-surrender value and applied to the extension of the insurance, which would have made the $108 considerably more than sufficient to pay the two premiums due April 8, 1903 and 1904, in which the insured defaulted.

It is insisted by counsel for the plaintiff in error that when default was made in the payment of the premium which was payable April 8, 1903, the company had the right first to apply from the cash-surrender value the sum of $77.37, in payment of McLendon's obligation for advances; which would have left only $30.63 to be applied upon the insurance premium, at term rates, and that thereby the insurance could only be extended to January 29, 1904, more than a year before the insured died, by which time the policy expired. We are unable to sustain this contention, in view of the stipulations of the contract as a whole. The contract distinctly recognizes the fact that there is a surplus fund as well as a mortuary fund, and the obligation of the insured for the loan of $16.55, advanced him annually at five per cent. interest, is not payable upon any definite day nor upon any fixed contingency, but the amount advanced April 8, 1899, together with any additional advances stated in the renewal receipt and endorsed thereon, is to be a lien, until extinguished by the surplus apportioned to the policy, or until it is otherwise paid to the company. The insistence of the plaintiff in error would deprive the insured of any participation whatever in the surplus fund, and yet, as appears from the policy, the guaranteed loan value at the time that the cash-surrender value would have been exhausted by the payment of the two premiums to which we have heretofore alluded would have been $228, while the insured would only have received the benefit, in all, of $146 of cash-surrender value; showing that there would have been a surplus, at the time that the company was entitled to make a settlement, of about $82, or more than enough to pay the company's advances of $77.37. The policy in question was an endowment policy, and recognized a surplus in which the insured was entitled to participate, arising from every premium except the first. It is probable that this surplus collected from policyholders, over and above the experience cost of meeting mortuary claims and providing the reserve fund required by law, was far greater than the amount indicated by the difference between the loan value and the cash-surrender value at the end of each year, as stipulated in the policy. But it is unnecessary for us to consider this view of the question, or the statutes of the State of Iowa in reference thereto, for the reason that it is plainly apparent to us as it was to the judge of the court below, that

there was and would be, at any time during the application of the cash-surrender value to the payment of premiums so as to automatically extend the insurance, a sum sufficient to pay the advances made to the insured and for which the company held his obligation, in accordance with its terms. The court properly held that the condition of the contract as follows: "Policy liability. Any indebtedness due the company by reason of this policy (including any balance of the year's premium) shall be a first lien against any equity, right, or interest of the insured, his heirs or assigns, under this policy, and such indebtedness shall first be deducted in settlement of any rights or privileges arising by virtue of this policy," when construed in connection with the provision with reference to the payment of premiums out of the cash-surrender value, simply gave the company a lien collectible from the amount due the beneficiary out of the proceeds of the policy, and conferred no right to deduct the $77.37, claimed as a lien, from the cash-surrender value. The advances made, under the contract between the parties, were chargeable to the excess of premium collected and the dividends to be allowed during the life of the insured, and in case of death were to be deducted from the total value of the policy. If it was the intention of the parties that the cash-surrender value could be applied to any pre-existing debt, or to any purpose other than the payment of premiums as to which the insured had made default, then it should have been so stipulated in the contract of insurance. The certificate of advancement, which we have quoted above, is equivalent to a promissory note, and "a note accepted in payment of a premium is a separate and independent transaction, . . and has no relation to the contract of insurance, except as stipulated in such policy of insurance." *Arnold* v. *Life Ins. Co.,* supra. In confirmation of this view, it is stipulated in the policy that "in *case of death* the balance of the year's premium, if any, and any other indebtedness to the company by reason of this policy, shall be deducted from the amount to be paid hereunder." Construing this with paragraph C of the non-forfeiture clause, which provides, that "if any premium herein is not paid when due, the same shall be charged as a loan against the cash surrender value, . . and the insurance will continue in force so long as this fund will pay for the same," and bearing in mind that it was optional with the insured,

throughout the entire life of the contract, even including the first year (for which year the premium was applied wholly to expenses), to pay only $49.65 in cash, it becomes perfectly clear that the $16.55, annually advanced at the option of the insured, was merely a portion of the excess premium, over and above the actual cost of insurance, which the company was anxious to lend the insured at five per cent. interest. It was virtually lending the insured his own money and charging him five per cent. for the privilege of using it.

The trial judge committed no error in overruling the general demurrer. To meet the special demurrer there should perhaps have been a more distinct averment as to the amount of premiums paid, in order to entitle the beneficiary to a recovery of fifty per cent. of the premiums guaranteed to her by the contract in the event the insured died within the twenty-year period, though we hardly think this necessary, in view of the fact that the petition alleges that four of the annual premiums were paid, and the policy specifies the amount of each annual premium, and the ascertainment of the fifty per cent. would be a mere matter of calculation. Even if the exact amount should have been specified, failure to sustain the special demurrer as to this point should not work a reversal of the judgment overruling the general demurrer. The amendment can still be made upon the trial.

*Judgment affirmed.*