## TAYLOR v. REID et al.

The material parts of a will made in 1878 were as follows: "4. It is my further will, that my real estate, consisting of lots of land Nos. 123, 124, 125, 132, and 157, in the 13th district of said county, and my town property in the town of Smithville in said county, shall belong jointly to my husband, Andrew J. Miller, and my daughter, Julia Eppie Miller;

one half to said daughter in fee simple, the other (1/2) one half to said Andrew J. Miller for and during his natural life, and after his death to revert to my said daughter, Julia Eppie Miller. 5. It is my further will and desire that if my said daughter should die without children, then her interest in my estate to go to my husband if in life; but if he should not survive my daughter, and she should die without leaving children or representatives of children, then her interest in my estate to be equally divided, one half (1/2) to the family of my beloved father, W. M. McAfee, and the other half to the heirs at law of my said husband, according to the statute of distribution of this State. 6. It is my further will and desire that all the property herein given to my said daughter, Julia Eppie Miller, shall belong to her and any children she may have, free from any debts or control of any husband she may have." The husband of the testatrix died before his daughter. At the death of the testatrix the daughter had no children; subsequently she married, and died leaving children. *Held* that the estate devised to the daughter (her father having predeceased her) is an estate in fee, subject to be divested upon her death without children or representatives of children. Upon her death leaving children the defeasance did not operate, and a grantee from her took a fee-simple estate in the lands devised in the will.

DECEMBER 17, 1915.

Complaint for land.   Before Judge Littlejohn.   Lee superior court.   October 20, 1914.

*Shipp & Sheppard,* for plaintiff in error.

*H. E. Coates* and *W. G. Martin,* contra.

EVANS, P. J.   This is an action of complaint for land.   The plaintiffs are the children of Julia Eppie Miller, who had intermarried with W. A. Reid; and the defendant is a purchaser from her.   It appeared from the petition as amended, that the land in controversy belonged to Julia M. Miller, and that in 1878 she made her will, the 4th, 5th, and 6th items of which are as follows: "4.   It is my further will, that my real estate, consisting of lots of land Nos. 123, 124, 125, 132, and 157, in the 13th district of said county, and my town property in the town of Smithville in said county, shall belong jointly to my husband, Andrew J. Miller, and my daughter, Julia Eppie Miller; one half to said daughter in fee simple, the other (1/2) one half to said Andrew J. Miller for and during his natural life, and after his death to revert to my said daughter, Julia Eppie Miller.   5.   It is my further will and desire that if my said daughter should die without children, then her interest in my estate to go to my husband if in life; but if he should not survive my daughter, and she should die without leaving children or representatives of children, then her interest in my estate

to be equally divided, one half (1/2) to the family of my beloved father, W. M. McAfee, and the other half to the heirs at law of my said husband, according to the statute of distribution of this State. 6. It is my further will and desire that all the property herein given to my said daughter, Julia Eppie Miller, shall belong to her and any children she may have, free from any debts or control of any husband she may have." The will was probated in common form in 1880. Julia Eppie Miller married after the death of her. mother and the probate of the will, and died in 1912. The question presented by the demurrer to the petition is, whether a conveyance made by Julia Eppie Miller Reid conveyed the fee-simple title, it appearing that her father predeceased her, and that she died leaving children; or whether she only took a life-estate, which passed to the plaintiffs, her children, upon her death.

There is no attempt by the testatrix to expressly devise a life-estate to her daughter, Julia Eppie Miller. She nowhere employs language usual to the creation of a life-estate. Her testamentary scheme seems to have been, from the 4th item, to give to her daughter an estate in fee to one half, and an estate in remainder upon the death of her father to the other half, of the designated land. In the 5th item she deals with two contingencies, i. e., that of her daughter's dying without children or representatives of children, and that of her husband's dying before the death of her daughter. In the contingency of her daughter's dying without children or representatives of children, all of the estate was to go to her husband, if in life; and should he be dead, it was to be distributed, one half to the family of her father and the other half to the heirs at law of her husband. So far as the 5th item relates to the character of the estate devised to Julia Eppie, it is to be regarded in the nature of a defeasance; that is to say, it converts the fee given to her in the 4th paragraph into one defeasible upon her death without children or representatives of children. The testatrix, in the 6th item, declares it to be her will "that all the property herein given to my said daughter, Julia Eppie Miller, shall belong to her and any children she may have, free from any debts or control of any husband she may have." The testatrix was particularly guarding the property given to her daughter from the control of any husband which she might have, or from any debts which such husband might contract. It is true that at the time this will was made (1878)

the married woman's act had been in force for something like 12 years, and the marital rights of the husband no longer attached to the wife's property, and the wife's property was not subject to the husband's debts; but it is a matter of common knowledge that the law respecting the marital rights of the husband over the wife's property had been in vogue so long in this State that, in the preparation of wills, careful and prudent testators, mindful of the waste .of a wife's estate by an improvident husband, continued to insert the old formula of hedging bequests to a female against her husband's liabilities. In the 6th paragraph the testator did not indicate that the wife's estate should be cut down from a fee to a life-estate. If the words were to be given a strict, technical significance, as creating an estate in the children, they would take a present estate in common with their mother. At the death of the testatrix, the devisee, Julia Eppie, had no children, and the devise therefore could not operate as creating a technical tenancy in common to them with their mother. We can not construe the 6th item as limiting a life-estate to Julia Eppie, for the reason that it would be impossible to give effect to the provisions in the prior items where the contingencies were dependent upon her taking the entire fee. This court has recognized and followed the rule that where an estate in fee is devised to one, it will not be cut down or reduced to a lesser estate, unless the will expressly so directs, or the implication is clear that the testator intended to devise only a life-estate. *Fellon* v. *Hill,* 41 *Ga.* 554; *West* v. *Randle,* 79 *Ga.* 28 (3 S. E. 454) ; *Thomas* v. *Owens,* 131 *Ga.* 248, 255 (62 S. E. 218). So that, in reaching the testatrix's intent, we construe the words "and her children," in the 6th item, to be nomen collectivum,—indicative of the testatrix's desire that her daughter's estate, which would naturally contribute to the support of her children, should not be bound for the defaults of her daughter's husband; and that the testamentary purpose was not to cut down the daughter's estate or to introduce into the enjoyment of such estate any additional persons. We might cite numbers of instances where wills have been construed, and where expressions have been used by our court, as guides to the conclusion reached in the particular case; but, as has been so often said, every will stands as a law unto itself, and the cardinal rule of construction is to ascertain the testator's intention from the will, and to give effect to this intention, if not in contravention of the

rules of law or policy of this State. We therefore reach the conclusion that the estate devised to Julia Eppie Miller (her father, having predeceased her) is an estate in fee, subject to be divested upon her death without children or representatives of children. Upon her death leaving children the defeasance did not operate, and the estate devised was not defeated, and a grantee from her took a fee-simple estate in the lands devised to her by her mother.

*Judgment reversed. All the Justices concur.*