NATHAN R. STRATTON v. LUBINS F. ROGERS.

If the heirs of full age, the estate being solvent, and no separation of goods applied for, have so far accepted the succession, purely and simply as to release its debts, the subsequent appointment of an administrator cannot revive them.

Parol evidence is inadmissible to explain a patent ambiguity in a marriage contract.

If the intention of the parties to a marriage contract cannot be discovered by the ordinary rules of interpretation, the contract must be declared void for uncertainty.

The meaning of Article 1738 of the Code is this: if the donor has made a donation to his wife simply of future property, and he survives her, the donation will fail, although there was issue of the marriage.

Construction of a marriage contract.

Code, 1728, 1730, 1737.

APPEAL from the Second District Court of New Orleans, *Morgan*, J. *Magne*, for plaintiff. *Durant & Hornor*, for defendant and appellant.

MERRICK, C. J. On the fourth day of May, 1853, the defendant being about to marry *Miss Emma Ann Shaw*, entered into a marriage contract with her, which contained the following provisions, viz :

" Art. 1. The said *Mr. Rogers* hereby declares that, after his debts and obligations, of whatever kind, are paid, he is worth, free of the world, more than the sum of $10,000, and that having neither ascendant, or descendant relatives, he, hereby, as a marriage present, *gives to the said Miss Emma A. Shaw, his future spouse, the sum of ten thousand dollars cash ; which said sum of money the said future husband to the said future wife has, in cash, and in the presence of the undersigned notary and witnesses,* well and truly paid, the receipt thereof is hereby acknowledged, and full discharge and acquittance therefore granted. And it is hereby declared and understood, that this donation is made *inter vivos*, gratuitous and irrevocable, and that in case of the decease of the said *Mr. Rogers* before his said future wife, *without issue from the said marriage, that the said act of donation shall be a first lien and privilege on the property and effects* belonging to the said *Mr. Rogers*, and shall be first paid out of the property of his succession, Art. 2. This donation shall not act as a bar to the claim which, in case of his death before the said future wife, she may have on his estate and succession for the one half of the acquets and gains that may accrue during their married life."

The parties were married on the twelfth day of May, 1853, and lived together until the 20th day of February, 1855, when the wife died, without issue surviving her.

The mother and a major brother of the deceased promptly released the defendant from any obligation arising from the act of donation.

The plaintiff, a brother-in-law, caused himself to be appointed administrator of the succession of the deceased *Mrs. Rogers*, and has brought the present action in that capacity, to recover of the defendant the ten thousand dollars donated by the marriage contract to *Mrs. Rogers* by her intended husband ; it being alleged in the plaintiff's petition, " that the ten thousand dollars were actually paid to her in cash, and then by her replaced in his hands and possession as her own (his wife's) property, and for which he acknowledged himself liable, as will more fully appear by a duly authenticated copy annexed to and filed with the present petition."

The defendant contends that neither he, nor his wife, knew the legal effect of the instrument they signed, and that the instrument was fictitious, that no money was paid, and that the sole object of the act was to secure to his said wife ten thousand dollars as a first privilege in the event she survived him.

The estate of *Mrs. Rogers* was solvent, and we discover no reason why the heirs of full age could not release their proportion of a supposed debt due to the succession. A subsequent administrator can only receive the succession in the legal condition in which he finds it; and if the heirs of full age, the estate being solvent and no separation of goods applied for, have so far accepted the succession, purely and simply as to release its debts, we do not know how the subsequent appointment of an administrator can revive them.

The plaintiff having successfully excluded all testimony explanatory of the intention of the parties to the marriage contract, that instrument must be considered as it stands, connected only with the fact that the parties were married, and that having lived together, subsequently the wife died. The case cannot be strengthened by the allegations in defendant's answer, unless they are all taken together, and then it would be of no advantage to plaintiff's case.

It must be admitted that the instrument sued upon is somewhat ambiguous, but that ambiguity is patent and does not justify the introduction of parol proof to explain it. It is the duty of the court to construe the instrument as a whole, ascertain the intent of the parties, and if possible, give effect to the same; but if such intent cannot be discovered by the ordinary rules of interpretation, the instrument is to be declared void for uncertainty. Speaking of this kind of contract, Troplong says : " Nul ne demande plus *de certitude*, de publicité et de solennité : il n'est pas seulement une règle pour les deux familles qui s'unissent et pour la famille nouvelle qui va sortir de cette union ; il est encore une loi pour les tiers et la base du crédit des futurs époux."

The instrument before us can have but one meaning. To ascertain that, let us consider first the construction placed upon it by the plaintiff. He contends that the instrument was the donation of ten thousand dollars present property, which the donor then had in his possession. And he deduces from it this important consequence, viz: that such a donation shall not be deemed to be on condition of survivorship, unless the same be expressly mentioned. C. C., 1737. Now if this be assumed as the fact, the same instrument shows that this sum of ten thousand dollars was actually paid in cash to *Miss Shaw* eight days before the marriage, which receipt *was duly acknowledged and full discharge and acquittance therefor given.* Here then, according to the plaintiff's rule of interpretation, is a donation—*but it is paid and accomplished.*

In order therefore to recover, it is essential that the plaintiff should show that *Miss Shaw*, who had received and acquitted the ten thousand dollars paid her by her intended husband, delivered to him, in the interval of the eight days or after the marriage, the like sum of money. There is no proof to this effect. We have the contract, the marriage of the parties, and the death of the wife from which to infer this essential fact. They are clearly insufficient, and plaintiff's action fails according to his own interpretation.

But let us look at the whole instrument and see if it is not susceptible of another meaning, and if that other meaning is not the true one.

We find the two clauses just adverted to, extinguish each other. By the one payment is promised : by the other it is acknowledged to have been made. But there is a third clause which looks to the future and gives tone and charac-

ter to the whole instrument. It is in these words: "And it is further declared and understood, that this donation is made *inter vivos*, gratuitous and irrevocable, and that in the case of the decease of the said *Mr. Rogers* before his said future wife, without issue from their said marriage, *that the said act of donation shall be a first lien and privilege on the property and effects belonging to said Mr. Rogers, and shall be first paid out of the property of his succession.*"

The second article of the marriage contract also provides:

"That that this donation shall not act as a bar to the claims which, *in case of his death* before her, the said future bride may have *on his estate or succession, for the one-half of the acquets and gains* that may accrue during their married life."

The intent of the whole instrument we think was to secure to *Mrs. Rogers* at the death of her husband, out of his succession if she survived him, ten thousand dollars. It was not intended to take from his employment or means of living, the amount of money mentioned in the act, and the language used in the two first clauses of the Act which mutually cancel each other, must be considered as a mere form with which the parties chose to clothe their contract. If any bank check was used, the money was not intended to be drawn from bank, but such check to be immediately returned. The payment and receipt were not intended to be real, for the same sum was finally secured to the future wife at the death of the husband out of his succession, notwithstanding such payment and acknowledgment. The life of the instrument is in the clause looking to the future and securing to the intended wife at the decease of her future husband the sums of money promised.

This view is strengthened by these further considerations.

Money has no identity. The ten thousand dollars to be paid were such as *Rogers* should have or could be raised from his estate at the time of his death.

The recital in the act of donation as to *Rogers'* affairs would imply a doubt whether he was really worth, after his debts were paid, the sum specified in the act. The wife brought into the marriage no estate of her own. They lived at the wife's mother and afterwards at a private boarding house from their marriage until the death of the wife. It is but fair to presume, therefore, that the sum donated was considerable, with reference to the remainder of the defendant's estate. Hence it is hardly probable that the intention of the parties was immediately to withdraw from the defendant's means so large a sum, or even to give to the wife the right, any time during the marriage, to exact this sum, and control the same as her paraphernal property.

Again, if the donation had been intended as of present property and not as payable out of the succession of *Mr. Rogers*, the second article of the contract which provided that this payment, out of his succession, should not prejudice the wife's interest in the community, was not only surplusage but irrelevant.

Also, there can hardly be a doubt that if immediately after the instrument had been executed, the question had been propounded to the parties, whether in the event the wife should die first, without leaving children, it was their intention to take from *Mr. Rogers* ten thousand dollars and give it to his wife's relations? the response from both would have been in the negative.

The answer of the law to the same question is also, as we think, in the negative.

We have satisfied ourselves that this donation was really intended as a dona- STRATTON
tion *in futuro* of the sum of ten thousand dollars, payable out of *Rogers'*   *v.*
ROGERS.
succession. It was, therefore, the donation of future property. 4 Marcadé, No.
280. This class of donations is provided for by Article 1738 of the Civil Code,
which is in these words:

"A donation of property in future, *or of property present and in future*,
made between married persons by marriage contract, whether simple or recip-
rocal, shall be subject to the rules established by the preceding chapter with
regard to similar donations made to them by a third person, except that it
shall not be transmissive to the children, the issue of the marriage, in case of
the death of the *donee* before the donor."

If we recur to the preceding chapter to ascertain what the rules thus referred
to are, we find that the donation made by a third person by the marriage con-
tract to either of the spouses, is given upon a condition. The last paragraph
of Article 1728 is in these words: " Such a donation, though made for the
benefit of the parties to the marriage or one of them, is always in case of the
survivorship of the donor, presumed to be made for the benefit of the children
or decendants to proceed from that marriage."

And by Article 1734 it is expressly provided that:

" Donations made to the husband or wife on the terms of Articles 1728 and
1730, fall, if the donor survive the *donee and his or her posterity.*"

The meaning of Article 1738 is, therefore, this: If the donor has made a
donation to his wife, simply of future property, and he survives her, the dona-
tion will fail, although there was issue of the marriage.

We attach no importance to the word irrevocable, used in the instrument.
At most, it could only mean irrevocable by the acts of the donor. It could
not be intended to imply that the instrument should not be revocable by the
act of God, (the death of the wife) and the condition imposed by law upon the
donation.

We think that the donation is revoked by the intention of the parties and
the operation of the laws. We feel ourselves therefore relieved from the
necessity, of affirming the judgment which our brother of the District Court
rendered with so much reluctance.

It is, therefore, ordered, adjudged and decreed, that the judgment of the
lower Court be avoided and reversed, and that there be judgment in favor of
the defendant and against the demand of the plaintiff, with costs of both courts.