BROWN *et al. vs.* RANSEY.

1. A woman being entitled to a distributive share of an estate located in Georgia and South Carolina, entered into an antenuptial contract in 1847, in order to secure herself the sole right to dispose of her separate property, so as to take effect after the death of either herself or her intended husband, notwithstanding her coverture, and to relinquish any claim she might have to dower or other provision from his estate, in case she survived him. Both herself and her intended husband were then and afterwards residents and citizens of South Carolina. The marriage settlement recited that she was entitled to a distributive share of the estate, and gave to the husband during the coverture the right to enjoy, for his use, all the interests and profits of the estate, but should he survive his wife, then the property was to go to such persons as she, "by her last will and testament in writing duly executed, should direct, limit or appoint, to the intent that the same may not be at the disposal or subject to the control, debts, forfeiture or engagements of the said (intended husband), but in default of su h direction, limitation or appointment, then to the heirs of said (intended wife)." Her distributive share of the undivided estate being set apart, it was conveyed in 1850 to her trustee "for the uses and purposes and subject to the agreements, provisions and limitations in all respects" of her marriage settlement, "and for no other uses, purposes or limitations whatever." The wife died in 1857, intestate:

*Held*, that the heirs of the wife should be determined according to the laws of South Carolina then of force as to the persons then answering that description.

(a.) Marriage contracts in writing are to be liberally construed, to carry into effect the intention of the parties; and no want of form or technical expression will invalidate them  The intention of the parties is the cardinal rule of construction. Attendant and surrounding circumstances may always be resorted to, and proof of the local usage or understanding of words is admissible to arrive at the meaning intended by the parties.

(b.) A partition having been had under the law of South Carolina, giving the husband one-third and the children two-thirds of the wife's estate, the children held title to the share received by them in Georgia, and it could not be subjected to the debts of the husband.

2. If the settlement were construed under the laws of Georgia, the husband would take nothing under the designation of "heirs," but the property would pass to the children, such being the evident intention of the parties

January 6, 1885

Brown *et al.* *vs.* Ransey.

Construction of Laws. Comity.. Husband and Wife. Marriage Settlements. Heirs. Words and Phrases. Title. Before Judge RONEY. Richmond Superior Court. April Term, 1884.

Reported in the decision.

M. P. CARROLL; F. H. MILLER, for plaintiffs in error.

W. T. GARY; R.. L. PIERCE. for defendant

HALL, Justice.

John Ransey, of South Carolina, at the time of his death, was seized and possessed in his own right of the land in dispute, situated in Richmond county, Georgia. Maria Theresa Bowers, as one of his heirs, was entitled to a distributive share of his entire estate, which was located both in Georgia and South Carolina. Before a distribution of the estate was had, the said Maria Theresa, in contemplation of a marriage then about to be had and solemnized between her and Angus P. Brown (they both then and afterwards being residents and citizens of the state of South Carolina), in order to secure to herself the " sole " right to dispose of her separate property, so as to take effect after the death of either herself or her intended husband, notwithstanding her " coverture," and to relinquish any claim she might have to dower or other provision from his estate, in case she survived him, on the 24th day of September, 1847, carried into effect this purpose, and an indenture tripartite between them and a trustee named therein was duly executed, and the marriage took place. This settlement was properly recorded both in South Carolina and in Georgia; it specifies all her property, and particularly sets forth that "she is entitled to receive as a distributee the one-fifth of the estate of the late John Ran sey, deceased (which estate is undivided), and consists of lands, negroes and money, amounting to some ten or fifteen

thousand dollars, as her distributive share." The particular provision of the trust deed, which is important in the determination of the questions raised by this record, is that which gives to the husband during the coverture the right to enjoy, for his own use, all the interest and profits of the estate, but should he survive the wife, then the property was to go to such persons as she, "by her last will and testament in writing duly executed, should direct, limit or appoint, to the intent that the same may not be at the disposal or subject to the control, debts, forfeiture or engagements of the said Angus P. Brown, her intended husband, but in default of such direction, limitation or appointment, then to the heirs of said Maria Theresa."

Upon the distribution of John Ransey's estate, the plantation in Georgia was assigned to Mrs. Brown, at a valuation of some $7,000. In pursuance of this assignment, made by the proper authority in South Carolina, and to carry it into effect, Ransey's administrator in Georgia, on the 7th day of March, 1850, conveyed the premises to her trustee, "for the uses and purposes, and subject to the agreements, provisions and limitations in all respects," of her marriage settlement, giving the parties thereto, its date and its record, "and for no other uses, purposes or limitations whatever." Mrs. Brown died at her residence in South Carolina in December, 1857. The husband, who survived her, sometime thereafter, claiming to be one of her heirs under the law of South Carolina, had this land partitioned. He took one-third of it, and assigned the remaining two-thirds to the claimants, who were her children, and were conceded, under that law, to be her other heirs. If the land descended, irrespective of the provisions of the marriage settlement and of the statute of the state where she was domiciled at the time of her death, and passed under the law of Georgia, it was admitted that the husband was her sole heir.

The land was levied on by attachment, issued on the third day of July, 1883. The claim was made to the two-

thirds thereof assigned to them, and of which they had been in possession for more than seven years previous to the levy, by the surviving children of Mrs. Brown. There was no dispute as to any of these facts; indeed, such of them as are material were admitted. At the trial, the plaintiff took upon himself the burden of proof, and when he had closed his evidence, the claimants moved "a non-suit," which was refused. Under the charge of the court, a verdict was returned finding the property subject. A motion was made for a new trial, upon various grounds, which was overruled. In order to dispose finally of this case, it is necessary to notice only the following grounds of this motion:

(1.) That the court erred in refusing to grant the motion made by claimants' counsel for a non-suit.

(2.) There was error in charging these written requests of plaintiff's counsel:

(*a.*) "If the jury believe from the evidence that Brown and his children believed they were the heirs of Mrs. Brown, and divided and went into possession of the land on that idea, they must find for the plaintiff."

(*b.*) "If the jury believe from the evidence that the claimants did not rely upon the gift alone as title from their father, and take and hold in good faith at the beginning and during their possession, and make such valuable improvements as an owner would have done, they cannot make out a good title by parol gift and seven years' possession. Before the jury can find there was a parol gift of land, they must find from the evidence that the children took from the father a gift of land, which they and he both thought was the land of the father, and relied solely and in good faith upon the Georgia statute allowing such gifts, for their title."

(3.) Because there was error in refusing to charge these requests made in writing by claimants' counsel:

(*a.*) "That if it appears that the deed from the administrator of Ransey to Wilson, trustee, under the marriage

settlement, was recorded in Richmond county, March 15, 1851, prior to the death of Mrs. Brown, and that the deed conveyed the realty by express reference to the marriage settlement as recorded in South Carolina, 'for no other uses, purposes and limitations whatsoever,' and plaintiff has introduced this marriage settlement to subject the land, that the question of who are the heirs of Mrs. Brown at her death, if she died intestate, and left her husband surviving her, is to be determined by the laws of South Carolina then of force as to the persons then answering that description; and the parties, if they contracted, with the laws of South Carolina of force, are estopped by the provisions of these laws as to who are heirs at law."

(*b.*) "That under the marriage settlement of September 24, 1847, the words, 'then to the heirs of the said Maria Theresa Brown,' mean, under the provisions of the instrument and laws of Georgia, children; and the estate in remainder, upon the death of Mrs. Brown, leaving her husband surviving, passed to her children."

1. We are satisfied that the law of the case was correctly stated in these requests of the claimants to charge, and that there was error in refusing them, and in giving those of the plaintiff's counsel. This case was presented to the court upon very able and exhaustive arguments by the counsel for the respective parties, and since it has been heard, we have been enlightened and greatly aided by the research and learning of distinguished counsel upon the principle involved in the case of *Guerrard vs. Guerrard.* Though last argued, that case was first decided. That was the case of a will executed in Pennsylvania, which conveyed lands in Georgia. The legatees were designated as "the right heirs" of the testators. We held that the land situated here should go to the persons who would have been embraced in that term according to the laws of Pennsylvania. The authorities are all reviewed in that case, and we are well satisfied with the conclusion there reached. It is true that was a will and this a trust deed. In con-

struing either, the great object is to ascertain the inten-
tion of the parties.   The law on the subject is clearly stated
in section 1777 of our Code, which in express terms de-
clares that " every marriage contract in writing, made in
contemplation of marriage, shall be liberally construed to
carry into effect the intention of the parties, and no want
of form or technical expression shall invalidate the same."
This benign and just rule was codified from our former de-
cisions.  3 *Ga.*, 367; 25 *Id.*, 305.  The intention of the par-
ties must be carried out, even though we have to disregard
rules of grammatical construction to effectuate it    39 *Id.*,
648.   This ascertainment of the intention is the cardinal
rule in the construction of all contracts (Code, 2755), and
while the rules of grammatical construction usually govern,
they may be disregarded to effectuate the intention ; sen-
tences and words may be transposed, and conjunctions
substituted for each other, and in cases of extreme ambi-
guity, where the instrument, as it stands, is without mean-
ing, words may be supplied.  Attendant and surrounding cir-
cumstances may always be resorted to, to aid in ascertaining
the intention.   It is likewise admissible to receive proof
of the local usage or understanding of words to arrive at
the meaning intended by the parties.  Code, 2757, sub-secs.,
1, 2, 8.  *Maxwell vs. Hoppie et al.*, 70 *Ga.*, 152, 160, fur-
nishes a striking instance of the application of these rules
to a post-nuptial settlement, to prevent the intention of
the parties to it from being defeated.   This was doubtless
a leading reason for the rule announced in section 8 of the
Code, that the validity, form and effect of all writings and
contracts are determined by the laws of the place where
executed, but when such writing or contract is intended
to have effect in this state, it must be executed in con-
formity to the laws of this state    *Grote vs. Pace*, 71 *Ga.*,
231, 237, 238.

2. If this settlement is to be interpreted by the laws of
Georgia, as plaintiff's counsel insist, the result would not
be so favorable to their client as it was under the arrange-

ments which his creditors now seek to set aside. In the event of the wife's failure to convey the estate settled, as it was stipulated she might, the husband, as we think, could take nothing under the limitation to her " heirs." This word, as there used, was a designation of the persons to whom the estate would pass upon the happening of that contingency; these persons were the wife's " *haeredes facti*" as contradistinguished from those who, in the absence of the agreement, would have been her heirs under the statute of distributions and descents. The main scope and purpose of this agreement seem to have been the substitution of others than the statutory heirs as those who should ultimately take, if the wife died without exercising the power with which she was invested, notwithstanding her coverture. The estates of the respective parties to the marriage are kept separate and distinct. In consideration that the wife renounces all claim or right to dower, or other provision out of her husband's estate, he relinquishes every interest in her estate, except the usufruct of the same during the coverture. The bargain seems to have been a fair and equal one, not in contravention of public policy, or of any law of which we are aware. Such arrangements have been frequently sanctioned by this court, and carried into effect according to the intention of the parties. In confirmation of this view, we cite two cases determined at the present term of the court: *Dunbar & Co. vs. Mize** and *Sasser vs. M: Williams.*† There are no facts in this case to authorize any inference of a gift from defendant to the claimants; they take as purchasers under the marriage settlement of their parents, and the consideration of the various questions growing out of this supposed gift had no place in this trial. The levy should have been dismissed upon claimants' motion to non-suit, but that having been declined, the charges requested by the plaintiff should not have been given, and those requested

---

*74 *Ga.* 130., †73 *Id* , 678.

by the claimants should not have been refused. The plaintiff utterly failed to make out a case entitling him to subject the property levied on to his debt, and nothing remains but to order the

Judgment reversed.