Filed Sept. 21, 1894.

---

No. 1,032.

## RAGSDALE ET AL. *v.* BARNETT, ADMINISTRATOR.

HUSBAND AND WIFE.—*Antenuptial Contract.—How Construed.—Intent.*
—In the construction of antenuptial contracts much liberality will be indulged to effectuate the actual intent of the parties, and in seeking the intent the courts will look not only to the letter of the instrument, but also to its general scope and purpose, and to the conditions, situation and surrounding circumstances attending the parties at the time the agreement was entered into.

SAME.—*Antenuptial Contract as to Personal Property.—Life Estate.—Remainder Over.—Settlement of Estate.—Administrator's Report.—Exceptions.—Trial.—Motion for New Trial.—Practice.*—Mrs. F., a widow, was seventy years of age, childless, and without living father or mother, but having living brothers and living nephews and nieces by deceased sisters. She had real estate, and a large amount of personal property which had been acquired by her deceased husband during the time she was his wife. Mr. B., a widower, was sixty-eight years of age, and had children living by a former marriage, and was possessed of an estate very much less than that held by Mrs. F. With this condition of things before them, Mr. B. and Mrs. F., just prior to their marriage, entered into an antenuptial contract which provided that "the survivor shall take no absolute right in the real estate of the other, but shall have the full use, control and rents of all such real estate as would descend to such survivor, under the law, during the life of such survivor; and shall take and have such part of the personal property of the one first departing this life as the law would give such survivor, and if any part

Ragsdale *et al. v.* Barnett, Administrator.

of such personal property shall remain at the death of such sur-
vivor, it shall go to the heirs and legal representatives of the one
dying first." The wife died intestate, the husband qualified as ad-
ministrator, and later filed a final report showing a large amount of
personal property in his hands for distribution. In this report he
stated that he was the only heir at law of the decedent and entitled
to the whole of such property, as absolute owner. He alleged that
the brothers of the decedent and the children of her deceased sis-
ters claimed an interest in the property, and on his application they
were made parties to the proceeding, he denying that they had any
interest, and asking a judgment establishing his ownership. The
defendants filed exceptions to the part of the report asserting abso-
lute ownership in the surviving husband, and alleged that he only
took a life estate in the personal property. Upon a hearing it was
adjudged by the trial court that the husband was the absolute and
unconditional owner.

*Held,* that, construing the antenuptial contract as a whole, and in the
light of surrounding circumstances, the surviving husband took only
a life estate in the personal property, with such power of disposi-
tion as might be necessary to the full enjoyment thereof, with re-
mainder over to the wife's heirs.

*Held,* also, that a motion for a new trial was the proper practice for
saving the question for decision, a motion to modify the judgment
not being necessary.

EVIDENCE.—*Agreed Statement.—Introduction.—Use of Word "Offered"
Instead of "Given."—Judge's Certificate to Bill of Exceptions.*—Where
the parties to an action agree upon the evidence, reduce it to writ-
ing and sign it, and in presenting the agreement to the court the
word "offered" is used, but the judge certifies that the evidence
contained in the bill of exceptions was "given," it sufficiently ap-
pears that the evidence offered was introduced and given.

From the Johnson Circuit Court.

*W. S. Sherley, W. J. Buckingham, E. F. White, W.
H. H. Miller, F. Winter* and *J. B. Elam,* for appellants.

*T. W. Woollen, G. M. Overstreet, Sr., Jesse Overstreet,
R. M. Miller, H. C. Barnett, B. K. Elliott* and *W. F.
Elliott,* for appellee.

REINHARD, J.—The appellee is the administrator of
the estate of his deceased wife, Ellen N. Barnett, and as
such he filed with the circuit court his final settlement
account showing, among other things, that he had in

his hands for distribution a balance of personal property amounting to $31,231.49.

In this report he stated that he was the only heir at law of said decedent and entitled to the whole of such property, as the absolute owner thereof, subject to a claim of Franklin College for $15,000, evidenced by certain obligations of the decedent and her former husband, which claims had not been adjudicated, and for the payment of which he had executed a bond, with surety, to the approval of the court, as required by statute.

On his application the appellants, who were alleged by him to claim some interest in said property, were made parties to the proceeding, that they might disclose such interest, if any they had, but it was expressly averred by him that they had no right, title or interest whatever in and to said property, or any part thereof. He further asked that upon final hearing of the cause the court order, adjudge and decree that he is the sole and absolute owner in his own right of all property and assets of said estate remaining for distribution, as shown by his report, subject to said claim of Franklin College, and that the appellants be adjudged to have no right, title or interest in the same or any portion thereof.

The appellants appeared and filed exceptions to the report, or to that portion thereof which asserted absolute ownership in the appellee of said property, and in such exceptions it was averred that all of the property to be distributed was inherited by the decedent from a former husband, one James Forsyth, and that by the terms of an antenuptial agreement between said appellee and the decedent, the former had only a life estate in said property, and that after his death the same was to go to the appellants, and they asked that in the respect stated the report be not approved.

Motions by the appellee to strike out and to dismiss

the exceptions were overruled, as was also his demurrer to such exceptions, and, upon issues thus joined, the cause was submitted to the court for trial, resulting in a finding that the report was, in all things, correct and should be approved and confirmed, and that the appellee was the owner and entitled to the unconditional custody and control of all property of said estate remaining for distribution after the payment of all debts, as shown by the said report, and that appellants should take nothing by their exceptions.

The court rendered a judgment and decree in accordance with the finding. The appellants thereupon moved for a new trial and to modify the judgment and decree, which motions were overruled and proper exceptions reserved.

Briefly stated, the facts disclosed by the evidence are as follows:

Ellen N. Barnett, whose maiden name was Ragsdale, intermarried with one James Forsyth in Johnson county, Indiana, where they lived as husband and wife for about fifty years, and until the 18th day of March, 1887, when Forsyth died, intestate. No child or children were born to them, nor did said Ellen ever have any child or children, and she remained the widow of said Forsyth until her marriage with the appellee, and was the only heir of said Forsyth. The said James and Ellen, during their marriage, acquired property, real and personal, which was owned by said James at the time of his death, of the value of between $50,000 and $60,000, the real estate being of the value of $15,000 to $20,000, and the personal property of the value of $35,000 to $40,000. The personal property consisted of money loaned and a small quantity of household chattels not worth more than $1,000. Ellen took possession of all of said property as the widow of James, and held the same in her own right

until the day of her death, which occurred on the 5th day of February, 1892.

The father and mother of Ellen were not living on the 20th day of December, 1888, but on that day she had brothers living, and who are still living, and also the children of two deceased sisters, said brothers and said sisters' children being the appellants in this case, and the parties who filed the exceptions to the report. The real and personal property which Ellen took as the widow of James Forsyth was and is situated in Johnson county, Indiana.

On the 20th day of December, 1888, William H. Barnett was the owner, in his own right, of real and personal property of the value of $15,000, and had two children living by a former marriage, who are still living, and are his only heirs at law. At the date mentioned, William H. Barnett was of the age of sixty-eight years, and Ellen N. Forsyth of the age of about seventy years. On that day, and in contemplation of marriage between the two, William H. Barnett and Ellen N. Forsyth entered into an antenuptial contract, which is as follows:

"This indenture witnesseth that William H. Barnett and Ellen N. Forsyth, both of Johnson county, Indiana, in anticipation of entering into the marriage relation and contract with each other, at a time near in the future, do hereby make the following antenuptial contract concerning their respective property, and the rights of the survivor in respect thereto, to wit: It is hereby agreed by and between said parties that the survivor shall take no absolute right in the real estate of the other, but shall have the full use, control and rents of all such real estate as would descend to such survivor under the law, during the life of such survivor; and shall take and have such part of the personal property of

the one first departing this life as the law would give
such survivor, and if any part of such personal property
shall remain at the death of such survivor, it shall go to
the heirs and legal representatives of the one dying first.
All of which is agreed to by said parties, and they hereby
release any and all other claims or right on any such
property that may accrue to such survivor by virtue of
such marital relation.

"Witness our hands and seals this 20th day of Decem-
ber, 1888.		(Sig.) WILLIAM H. BARNETT. [Seal.]
			"(Sig.) ELLEN N. FORSYTH. [Seal.]"

After the execution of this contract, and on the same
day, the parties were lawfully married, in Johnson
county, Indiana, and there continued to live as husband
and wife until the 5th day of February, 1892, when
said Ellen N. Barnett died, intestate, the antenuptial
contract remaining in full force and effect.

The personal property mentioned in the final report is
the same, or the remaining portion of, property owned
by the decedent at the time of her marriage with the ap-
pellee, and its accumulation thereon since that date.

The appellants insist that their motion for a new trial
should have been sustained upon the ground assigned in
such motion, viz., that the finding and judgment are not
supported by the evidence. We agree with appellants'
counsel that the averments of title contained in the ap-
pellee's final report, together with the act of bringing the
appellants into court to litigate the question of owner-
ship, were tantamount to a proceeding to quiet the title
of the property in the appellee, as the absolute owner
thereof; that the report was equivalent to a complaint in
such a proceeding, and took the place thereof, while the
exceptions filed by the appellants, in which they set
forth their claim or interest, were, in effect, an answer

denying the ownership of the property by the appellee, as alleged in his said report.

The issue tendered by the pleadings, therefore, was whether the appellee was entitled to have the property distributed or set off to him as the unconditional owner of the same, or whether his title was subject to an interest over in the appellants. In such proceeding the appellee occupied the position of a plaintiff, and the appellants the place of defendants. The appellee having tendered the issue of absolute ownership in himself, the burden was upon him to establish the same by a preponderance of the evidence. The overruling of the exceptions to the report was a finding for the plaintiff upon the issue tendered. If that finding was supported by the evidence, the motion for a new trial was properly overruled. If, upon the uncontradicted evidence, the finding and judgment should have been for the appellants, the motion for a new trial should have been sustained. This was the theory upon which the cause seems to have been tried in the court below, and so we regard it proper to treat the case here.

Whether or not the circuit court reached the correct conclusion by its finding and judgment depends solely upon the proper construction of the antenuptial agreement upon which the respective claims of the contending parties are founded. We take it that the controlling question in the case is, what was the quantity of interest in the personal property transferred by the terms of the contract? Did that instrument create in the survivor an unlimited estate in the personal property of the one dying first, or did it confer only a life interest upon such survivor, with or without power of disposition, and with a remainder over in the heirs of the first decedent?

In the construction of contracts having in view the settlement and disposition of property between the

Ragsdale *et al. v.* Barnett, Administrator.

parties about to enter the marital relation, much liberality is indulged by courts to effectuate the actual intent of the parties without reference to the strictly technical meanings of words employed. The cardinal rule by which all such contracts are measured and construed is the intention with which the parties contracted, and in seeking this the courts will look not only to the letter of the instrument but also to its general scope and purpose, and to the conditions, situation and surrounding circumstances attending the parties at the time the agreement is entered into. *Mintier* v. *Mintier*, 28 Ohio St. 307; *Ardis* v. *Printup*, 39 Ga. 648; *Brown* v. *Ransey*, 74 Ga. 210; *Neves* v. *Scott*, 9 How. 196; *Hooks* v. *Lee*, 8 Ired. Eq. 157; *Smith* v. *Moore*, 3 Green Ch. 485; *Hafer* v. *Hafer*, 33 Kan. 449; *Johnston* v. *Spicer*, 107 N. Y. 185; *May* v. *May*, 7 Fla. 207; *Hutchins* v. *Dixon*, 11 Md. 29; *Estate of Baubichon*, 49 Cal. 19; *Stratton* v. *Rogers*, 11 La. Ann. 380.

To use the language of an eminent jurist of our own State: "In truth, not only do the authorities affirm that no formality is required, but they go further and declare that such contracts are to be construed with liberality and favor." And further: "Reason and authority are both in favor of a liberal construction of these contracts, for their purpose is to prevent strife, secure peace, adjust rights, and settle the question of marital rights in property. From the earliest years of the law the courts in chancery, rejecting the iron rules of the common law, have favored contracts of this character, and this rule of equity has been engrafted into the body of American jurisprudence." ELLIOTT, J., in *McNutt* v. *McNutt*, 116 Ind. 545 (558).

An American author of high standing expresses the rule of a liberal construction of marriage settlements as follows: "With respect to the form of marriage settle-

ments it may be generally observed that equity pays no regard to externals, but considers only the substantial intention of the parties.'' Schouler Dom. Rel., section 176.

The Supreme Court of Georgia, in the case of *Brown v. Ransey, supra,* declares the rule to be that marriage contracts in writing are to be liberally construed to carry into effect the intention of the parties, and no want of form or technical expression will invalidate them. The intention of the parties is the cardinal rule of construction. Attendant and surrounding circumstances may always be resorted to, and proof of the local usage or understanding of words is admissible to arrive at the meaning intended by the parties.

What, then, was the intention of the contracting parties in the case before us, with reference to the nature of the interest that should pass to the survivor in the property of the party dying first? Ellen N. Forsyth was the owner of a large estate consisting of both real and personal property, which she had inherited from a former husband, and which had been accumulated by their joint labors during their married life extending over a period of half a century. She was a widow seventy years of age when she was married to the appellee, and the latter was sixty-eight years old.

It is fair to presume, therefore, that they could not have contemplated a long duration of their conjugal relation, nor that any child or children would be born to them. She had no children nor father nor mother living, but she had brothers and children of deceased sisters, some of whom would, in all probability, survive her, and who, being the kindred of her own blood, it is not unreasonable to believe, were, to an extent, the objects of her bounty. Appellee's estate, especially his personal property, was greatly inferior in value to her

own, and he had two children living by a former marriage, who, in the event of his prior death, would inherit the greater portion of his estate, even under the most favorable construction of the agreement, and that under the statute of descent, which seems to have been incorporated into the contract, she could, in no event, take but an insignificant portion of such estate. R. S. 1894, section 2644 (R. S. 1881, section 2487).

Under these circumstances and conditions is it reasonable to suppose, in the absence of a clear stipulation to that effect, that the parties intended that Ellen N. Forsyth should confer upon the appellee not only a life estate in all her realty, but also an absolute ownership of her personal property? That the parties had the right to make a contract to the effect stated, we shall not, for a moment, undertake to call in question, but we do not feel called upon to unduly extend the rules of construction in order to give it that interpretation, and should be very reluctant to declare it to be such a contract, unless required to do so by the plain provisions of the law.

If the contention of the appellee's learned counsel, as to the proper construction to be placed upon the antenuptial contract, is to prevail, then if the appellee's decedent had died the day following the marriage, the appellee would, of course, have become the absolute owner immediately of the decedent's entire personal property, and the heirs for whom she evidently aimed to make provision would have received nothing, just as they will receive nothing now, in the event of such a construction. And yet we apprehend that if Mrs. Forsyth, at the time she entered into the agreement, had been asked whether, in the contingency of her prior death, she intended such a result to follow, her answer would have been a decided negative.

It will be seen, from a perusal of the contract, that the

portion which relates to the real estate contains a clear limitation of the survivor's interest in the property of the other to an estate for life, and no controversy has arisen over the construction of this provision. It is only that part of the agreement which attempts to dispose of the personal property of the survivor with which we are concerned, although the stipulation concerning the realty is not altogether without its influence in ascertaining the true intent with which the parties contracted.

The introductory portion of the item regarding the personal estate, or that part which confers title to the same, it must be admitted, might be upon its face, and in the absence of any modifying clause, the transfer of an absolute interest. The provision referred to is that "the survivor shall take and have such part of the personal property of the one first departing this life as the law would give such survivor."

The "law" here contemplated is unquestionably the statute, by virtue of which the whole of the decedent's property, both real and personal, goes to the surviving husband. R. S. 1894, section 2651 (R. S. 1881, section 2490).

But it would be doing violence to all rules of construction to single out an isolated clause of a contract and construe it without reference to every other clause contained in the same, and referring to the same subject, and thus ignore the general scope and effect of the whole contract, to say nothing of the circumstances, conditions and the situation of the parties under which they were acting at the time.

What, then, is the effect of the succeeding clause providing that "if any part of such property shall remain at the death of such survivor, it shall go to the heirs and legal representatives of the one dying first?" Or, per-

haps, more properly stating the question, what is the reasonable interpretation to be given to the entire provision as to the personal property, when considered in its full scope or as an entirety?

Parties contemplating marriage have the clear right, by contract in writing, to intercept the statutory line of descent and substitute for it a rule of inheritance of their own creation. 1 Bish. Mar. Wom., section 427; *McNutt v. McNutt, supra.*

This the parties to the contract under consideration must have known, and hence if they had contemplated that as to the personal property the law should simply take its course, that portion of the contract relating to the transmutation of such property was an idle and meaningless performance. We are aware that this alone furnishes no sufficient reason for upholding the contention of the appellants with respect to the construction to be given the contract, but it is a circumstance which we think this court is bound to take into consideration, and can not ignore, unless the terms of the instrument are sufficiently explicit in themselves to leave no room for doubt.

We are of opinion that when the two clauses of the contract mentioned are considered together, in the light of all the surrounding circumstances, the expression, "shall take and have such part of the personal property," must be regarded as having reference to the quantity or portion of the property which the survivor shall take, and not to the kind of an interest such survivor shall acquire in such part. This construction, it seems to us, is not only in harmony with the principles of equity and fair dealing, but is easily reconcilable with each of the two provisions of the instrument in relation to the personal property, and involves no violation of the letter or spirit of either. There is not a word within the entire

scope of the contract, when considered as a whole, which indicates an intent to confer upon the survivor such an estate or interest as the statute would give.   The stipulation is not that such survivor shall take under the statute, or shall inherit or acquire the same interest that the law would confer, but the words of grant are limited carefully to a designation of the part or proportion of the estate which he or she is to receive.   In the absence of the latter clause, or some other words of limitation, the intent to confer the interest, as well as the proportion, might possibly be inferred.   But not so when the last clause is considered in connection with the first.   The "part" of the personal property which the surviving husband would take by virtue of the statute is the whole, whereas the surviving wife would inherit only the one-third part.   Thus far the contract and the statute are identical.

The estate or interest the husband would acquire under the law  in the personal property of his deceased wife is an absolute one.   R. S. 1894, section 2651.

The estate or interest which the surviving wife would acquire in the personal property of her husband is likewise a fee-simple or absolute interest.   *Sigler* v. *Hooker*, 30 Ind. 386.

Hence if the parties intended, under the provisions of the contract, that the survivor should take an absolute title of such portion of the other's property as the law would give such survivor, the latter would take no greater or smaller interest or title than the statute would confer without such contract.   The manifest aim of the contract, therefore, was not that the parties should take under the law, but that the survivor should have a life-estate only in such part of the personal property of the other as such survivor would take by virtue of the statute, and that the remainder of such part, after the death

of the survivor, should go to the heirs of the one first departing this life.

The contract, moreover, is not merely a settlement of the property of the prospective wife upon her husband, in the nature of a testamentary disposition which may be revoked at any time before death. It is a contract involving mutual considerations and reciprocal obligations and rights depending upon future contingencies. Such an agreement, it seems to us, is invested with every essential feature of mutuality, and must be governed by the ordinary rules applied to the construction of mutual contracts between parties. The instrument must be considered, therefore, with reference to the obligations imposed, and rights that might be acquired by either of the contracting parties under its provisions, and not merely as an *ex parte* performance by the decedent. The parties must have had in mind these mutual and reciprocal provisions when they entered into the agreement, and hence it is essential that effect be given the contract as viewed in this light. If considered as an ordinary contract *inter partes*, it is essential that full meaning be given to every part, when it is possible to do so, without disregarding any other portion. To quote the language of the court of appeals of New York: "Every lawful provision or condition in the contracts of parties should control and should not be disregarded in the determination of their rights, if it can be deemed to have entered into the contract with any definite or perceptible purpose. In interpreting their agreements and in determining the respective obligations based upon their writings, courts should look at the surrounding circumstances, the situation and relations of the parties, and the subject-matter of their negotiations. In that way the intention, where there is any uncertainty, is better given effect, and their undertaking is more certain to

receive a reasonable and fair interpretation.'' *Bank of Montreal* v. *Recknagel*, 109 N. Y. 482 (490). And in the same case the learned judge who pronounced the judgment of the court said: ''I do not think it depends upon the arrangement of words in the writing, but on the reason and sense of the thing, as it can be collected from whatever constitutes the agreement sought to be enforced.'' Id. p. 491.

Our own Supreme Court declared that effect will be given to the intention of the parties to an instrument, such as a bond, for example, as indicated by the entire contract, notwithstanding repugnant words in the condition. *Marlett* v. *Wilson's Exr.*, 30 Ind. 240.

And in *Beard* v. *Lofton*, 102 Ind. 408, it was ruled that the leading purpose in the construction of every contract, is to ascertain the true meaning of the parties, although (where the contract is free from ambiguity) such meaning must be determined from the contract as written.

In 5 Lawson's Rights and Remedies, section 2316, the rule of construction is laid down as follows: ''In all contracts, where the meaning of language is to be determined by the court, the governing principle must be to ascertain the intention of the parties through the words they have used. This principle is one of universal application. So every part of a document should be construed with reference to the intention of the parties as to the whole contract. To ascertain that intention, regard must be had to the nature of the instrument itself, the condition of the parties executing it, and the objects which they had in view.'' This language is quoted approvingly by the Supreme Court in *City of Vincennes* v. *Citizens' Gas Light Co.*, 132 Ind. 114.

In a still more recent case it was ruled by the same court, in relation to the construction of a deed, ambigu-

ous in its terms, that, when in such a case it is neces-
sary to resort to rules of construction, the instrument
will be considered as a whole, and construed most favor-
ably to the grantee; and, if possible, some effect will be
given to the deed; for it will be assumed that the
parties intended the deed to be operative, and not a mere
nullity.    *Davenport* v. *Gwilliams*, 133 Ind. 142.

The deduction to be drawn from these and many
other authorities that might be cited is that in con-
tracts between parties the controling rule of construc-
tion is to ascertain and give effect to the intention of
the parties; that this intention must be sought, not in
isolated words, phrases or sentences, but in taking the
instrument in its entire scope and purpose; that effect
must be given to every provision, if possible, and that
when the meaning of the language is obscure or am-
biguous, resort may be had to the situation and relation
of the parties, and the surrounding circumstances under
which the contract is made.

Considered as an ordinary contract between parties,
therefore, the instrument is easily susceptible of the
construction given it.    The interpretation upon which
appellee insists renders meaningless one entire clause of
the instrument, and if it be regarded in the nature of a
deed it conveys nothing to one group of grantees specifi-
cally mentioned as such.    The other construction is in
accordance with reason and equity, gives effect to the
entire instrument, and, in our opinion, carries out the
manifest intention of the parties.    If it may be said,
however, that this class of contracts is in a sense *sui
generis*, and that the ordinary rules of construction are
not always applicable, it still remains true also that in
this class of agreements the intention of the parties is
the essential and uppermost thing to be ascertained; and
when this intention is clearly manifest from the whole

instrument, it will be given effect, notwithstanding there are apparently repugnant provisions or expressions contained in such instrument. Of such an agreement as this, it was said by the Supreme Court of Georgia in *Brown* v. *Ransey, supra:* "The intention of the parties must be carried out, even though we have to disregard rules of grammatical construction to effectuate it. This ascertainment of the intention is the cardinal rule in the construction of all contracts, and while the rules of grammatical construction usually govern, they may be disregarded to effectuate the intention. Sentences and words may be transposed, and conjunctions substituted for each other, and in cases of extreme ambiguity, where the instrument, as it stands, is without meaning, words may be supplied. Attendant and surrounding circumstances may always be resorted to, to aid in ascertaining the intention."

In the present case the doctrine of construction need not be carried to the extent of substituting, or even transposing, words or sentences when all the provisions of the instrument are considered together, in the light of the surrounding circumstances, in order to give effect to the obvious purpose sought to be accomplished.

Conceding however, that the analogy between this class of instruments and wills, in the respect of the means of ascertaining the intent of the parties, is as complete as contended for by appellee's learned counsel, and that the same rules of construction must be applied, we do not think it necessarily follows that appellee's construction must be adopted. Even a will must be so construed as to render every part effective, where it is possible to do so without violating the rules of law. If we treat the instrument before us as of a testamentary character, there is still no rule that compels us to give the first clause regarding the personal property the effect of an absolute bequest.

As stated in another portion of this opinion, so we may repeat here—the first clause or provision is descriptive only of the part or quantum of property the survivor is to take, without reference to the kind of the estate or interest therein. Nor is it true that the anterior clause here contains any absolute power of disposition or alienation. That power is given only in the last clause or provision, and there only by implication. The first item in the instrument being a designation only of the quantity of the property the survivor shall take, the subsequent words, providing that the remainder shall go to the heirs of the first decedent, clearly imply that, at the death of the survivor, the quantity of the property may be less than it was at the time of the contract, and hence contemplate a power to dispose of some parts of the estate. But this power of disposition does not render the limitation void if the power is confined to the life estate, or to the use and enjoyment of the property during life. In such a case, the remainder over will be upheld. This position, we think, is fully sustained by the following cases: *John* v. *Bradbury, Admr.*, 97 Ind. 263; *Goudie* v. *Johnston,* 109 Ind. 427; *Jenkins* v. *Compton,* 123 Ind. 117.

Few rules of law, indeed, are so fixed and inflexible as to admit of universal application. This is especially true of the rules applied to the construction of wills. If the intention of the testator is to be the true criterion—the pole star for the guidance of the court—then due effect and force ought to be given such intention when it becomes clearly manifest.

Says Schouler, in his work on Wills, section 466: "Yet every will should be interpreted, as far as possible, from the standpoint apparently occupied by the testator, and attendant circumstances, such as the condition of his family, and the amount and character of his property may and ought to be taken into

consideration as part of the *res gestæ,* where the language is not plain, nor the meaning obvious. And the testator's intention ought at least to control any arbitrary rule, however ancient its origin, which is unreasonable or not well established or doubtful of its immediate application.''

The case of *Smith* v. *Bell,* 6 Pet. 68, furnishes an excellent illustration of the text just quoted. In that case the provisions in the will were quite similar to those in the instrument before us. The testator had bequeathed to his wife all his personal property of every kind and description ''for her use and benefit and disposal, absolutely,'' the remainder of said estate, after her decease, to be for the use of the testator's son, named in the will. It was held that the son took a vested remainder in the personal estate after the death of the testator's wife. Chief Justice Marshall delivered the opinion of the court, and said, among other things: ''If the testator attempts to effect that which the law forbids, his will must yield to the rules of law. But courts have sometimes gone farther. The construction put upon words in one will, has been supposed to furnish a rule for construing the same words in other wills; and thereby to furnish some settled and fixed rules of construction which ought to be respected. We can not say, that this principle ought to be totally disregarded; but it should never be carried so far as to defeat the plain intent; if that intent may be carried into execution, without violating the rules of law. It has been truly said (3 Wils. 141) 'that cases on wills may guide us to general rules of construction; but, unless a case cited be in every respect directly in point, and agree in every circumstance, it will have little or no weight with the court, who always look upon the intention of the testator as the polar star to direct them in the construction of wills.' ''

Ragsdale *et al. v.* Barnett, Administrator.

Counsel for appellee, in a supplemental brief, have called our attention to a very recent decision of the same court that rendered the decision from which the above quotation is made, in which counsel claim the case of *Smith* v. *Bell, supra,* has been limited or criticised. *Roberts* v. *Lewis,* 153 U. S. 367.

A careful examination, however, of the case relied upon fails to disclose that the court did anything more than to distinguish *Smith* v. *Bell, supra,* from the case under decision in *Roberts* v. *Lewis, supra.* It is in no manner disapproved. It is cited with approbation in *Brant* v. *Virginia Coal, etc., Co.,* 93 U. S. 326, and by the Court of Appeals of New York, in *Crozier* v. *Bray,* 120 N. Y. 366, as also by our own Supreme Court as late as *Goudie* v. *Johnston, supra,* although it is true that it has been criticised by one or two other courts of last resort.

In *Ritch* v. *Hawxhurst,* 114 N. Y. 512, it was said: "When the language of a provision of a will is plain and free from ambiguity, effect must be given to its import. When it is equivocal, the intention of the testator in the use of the language employed by him, must be sought for by reference to all the provisions of the will, and to such circumstances as may properly be entitled to consideration. And in such case there is no inflexible rule of interpretation to govern the determination of that inquiry. While the rules of construction may aid somewhat the way to a conclusion, they are not to be used to frustrate the intention of the testator, but when that is ascertained the language and mode of expression, if of doubtful import, may be subordinated to such intention."

In *Jenkins* v. *Compton, supra,* it was said by OLDS, J., speaking for the court: "To place the construction on the will contended for by the appellant would render a

VOL. 10—32

portion of the will meaningless, and require it to be treated as surplusage. If the widow took a fee, then the provision giving her full control and power to sell, without accounting, is surplusage, and the provision that if there be any of the estate remaining at the death of his wife, it shall go to his children, is meaningless and of no effect.''

And, in the same case, in construing the words of the will and determining whether a power of disposition contained therein was absolute or limited, it was said: ''It is evident that the testator did not intend the wife to take more than a life estate or the use of the property during her life, unless it became necessary for her to use the principal, or a portion of it, for the purposes named, and in that event he intended to place it in her power to sell and dispose of it without unnecessary expense or being compelled to give bonds or render an account, and that whatever should remain at her death should go to his children.'' See, also, *Wood* v. *Robertson*, 113 Ind. 323; *Crooke* v. *DeVandes*, 11 Ves., Jr., 330; *Upwell* v. *Helsey*, 1 P. Williams, 652; *Shimer* v. *Mann*, 99 Ind. 190.

From these and kindred authorities that might be cited we feel fully justified in adhering to the construction we have felt disposed to place upon the instrument before us, even though it must be interpreted by the rules applicable to the construction of wills. We are not unmindful of the cases which declare the general doctrine that where an absolute estate is once conferred or an absolute power of disposition clearly granted, any subsequent clause by which it is attempted to cut down such estate, or create a remainder over, is void, as repugnant to the first provision. *Essick* v. *Caple*, 131 Ind. 207; *O'Boyle* v. *Thomas*, 116 Ind. 243; *Outland* v. *Bowen*, 115 Ind. 150; *Fullenwider, Admr.,* v. *Watson*, 113 Ind. 18; *Hochstedler* v. *Hochstedler*, 108 Ind. 506.

But we do not think the case before us falls within the lines of the rule stated, the first provision in the ante-nuptial agreement being silent as to the quantity of interest to be taken by the survivor, if our interpretation be correct. While it is true that the first provision might be sufficient in the absence of the subsequent clause to authorize the inference of a conveyance of an absolute interest, we do not think the two clauses construed together will bear that construction, especially so when considered in the light of all the circumstances. We think the instrument gives the survivor a life estate with such power of disposition as may be necessary to the full enjoyment thereof.

Our conclusion is that the finding of the court was erroneous, and that a new trial should have been granted.

We have already decided, in effect, that a motion to modify the judgment was not necessary, but that the motion for a new trial was the proper practice for saving the question.

It is further insisted, however, that it affirmatively appears from the record that no evidence was introduced or given in the cause, and that hence we can not consider that which is set forth in the bill of exceptions. It appears that the parties reduced to writing what the evidence would be, and agreed to such statement by signing the same. The word used in connection with the presentation of such agreement to the court, as well as the other evidence, was "offered" instead of introduced or given. The judge certifies that the foregoing was all the evidence "given" in the cause.

We think the statement that the evidence was offered, when taken in connection with the judge's certificate, shows substantially that the evidence offered was given. If the word offered had been used interchangeably with introduced or admitted, the rule sought to be invoked

by appellee's counsel would apply. But we do not think that the language used in connection with the introduction of the evidence admits of any doubt as to its having been given. See *Harris* v. *Tomlinson*, 130 Ind. 427; *Gish* v. *Gish*, 7 Ind. App. 104.

If, however, we are wrong in this, then the appellee has no standing in this court, and had none in the circuit court. As we have seen, the burden was upon him to establish the affirmative of the issue tendered by him. If he introduced no proof whatever, and none was introduced, the finding should have been for the defendants, the appellants here.

Judgment reversed, with directions to grant a new trial and for further proceedings not inconsistent with this opinion.